## MARY FINK v. CHARLES CHAMBERS.

*Bills and notes—Bona fide purchaser.*

1. That another had actual knowledge can only be shown by proof of facts from which such knowledge may be fairly inferred.

2. The non-performance by the payee in a note of an agreement in consideration of which the note was given will prevent a recovery on the note by any one not a *bona fide* holder of the paper for value; citing *Sutton v. Beckwith*, 68 Mich. 303, 310.

3. There was some evidence to support the finding of the jury that the plaintiff had knowledge of such facts and circumstances, at the time of her purchase of the note sued upon, as made such purchase, with the intention of enforcing it, an act of bad faith on her part.

Error to Ingham. (Person, J.) Argued April 13, 1893. Decided May 31, 1893.

*Assumpsit*. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Howard Wiest* (*W. F. Atkinson*, of counsel), for appellant.

*E. D. Lewis* (*S. L. Kilbourne*, of counsel), for defendant.

McGrath, J. This is an action upon the following promissory note:

"$120.00. Leroy, Oct. 8, 1888.
"On or before the seventh day of October, 1890, I promise to pay to F. H. Leavenworth & Co., or order, one hundred twenty and no one-hundredths dollars, value received, with interest at six per cent. per annum from Oct. 7, 1889, payable at Williamston Fence Factory.
"C. Chambers.
"E. A. Leavenworth, Witness."

Plaintiff, the indorsee of the note, is the mother of H. A. Leavenworth. H. A. is the father of E. A. Leavenworth. E. A. Leavenworth and his wife, F. H., constituted the firm of F. H. Leavenworth & Co., the payees named in the note. Plaintiff and H. A. Leavenworth reside in the township of Locke, Ingham county, and F. H. Leavenworth & Co. reside in Omaha. In the fall of 1888, E. A. Leavenworth and his wife spent a few months in Michigan, making their home a part of the time with H. A., and a part of the time with plaintiff. Plaintiff and H. A. lived about half a mile apart. E. A. Leavenworth, for the firm, proceeded to make certain contracts with various persons, establishing township agencies, with power to contract, build, and sell certain manufactured fence, covered by letters patent, claimed to be owned by F. H. Leavenworth & Co. To induce parties to enter into contracts of agency, E. A. exhibited to each party an agreement purporting to have been made with H. A. Leavenworth, by the terms of which a manufactory was to be established at

Williamston. H. A. was to have charge of the same, manufacture the fence, fill all orders, use his own best endeavors to sell the fence, and credit the township agent with the commission on such sales. He also exhibited a "manufacturer's certificate" signed by H. A. Leavenworth, setting forth that he, for the firm, was to operate the manufactory, pay all commissions to agents appointed by F. H. Leavenworth & Co., and fill all orders, "guaranteeing to all who obtain an agency for the sale of said fence fair and honest terms and square dealing." A number of agents were appointed, one of whom was defendant. On the 7th day of October, 1888, an agreement was entered into between F. H. Leavenworth & Co. and defendant, which recited the intention of establishing a permanent industry at Williamston for the purpose of manufacturing and selling said fence, the appointment of defendant as their lawful agent to sell the same, and the fact that the manufactured fence was to be kept in stock by the manufacturing agent at Williamston, and at all times to be furnished to the defendant at certain prices given, and concluding as follows:

"The manufacturing agent has also bound himself, by contract, to use his endeavors to sell the fence, and on all sales made by him, or at the factory, to credit the township agent wherein the fence goes with all in excess of wholesale prices; the same to be sold so that the net profits to the agents shall at all times be 15 cents per rod, or $48 per mile.

"The party of the second part, for and in consideration of the rights and privileges herein granted, does hereby agree to use his endeavors to sell the fence in the above-named territory, keep a true account of the same, and remit by draft or postal order, to the first parties, five cents per rod of the commission, after he has received all of the commission, amounting to $360, on the first seven and one-half miles that are sold, as he has this day paid $120 to the first parties by the execution of his obligation, the commission on two and one-half miles of fence, said

two and one-half miles of fence to be sold in one year from the above date, as said obligation is given in consideration of the township two-thirds interest in the business and privileges herein granted; and, if said two and one-half miles of fence are not sold at the expiration of one year, said F. H. Leavenworth & Co., or their authorized representatives, are unconditionally empowered to cancel said contract of said agent, and appoint another agent in his stead, returning to said agent the original obligation, of even date herewith, of $120, or the amount thereof, but not the amount of the commissions paid thereon.

" The second party has the right to use, on all his own lands, the fencing, at factory prices, and the exclusive management of the business in his territory, and is to report amount of business, by letter, to the first parties, at their general office, in Omaha, Nebraska, semi-annually, on or before January and July. If seven and one-half miles of fence is not sold in one year, time extended two years."

The proofs clearly tended to show that no manufactory was established at Williamston; that defendant had in good faith taken orders, and had endeavored, on several occasions, to have them filled, but without success; and there was abundant testimony to warrant the jury in finding that these preliminaries involved a fraudulent scheme to get possession of these notes without any consideration whatever. A number of notes were secured. Three of them were turned over to plaintiff, and one to the wife of H. A. Leavenworth.

The plaintiff claimed to be a *bona fide* holder for value. The jury found a verdict for defendant, and made the following special findings upon questions submitted by plaintiff:

"*First.* Did plaintiff pay a valuable consideration for the note? No.

"*Second.* Did plaintiff, at the time of her purchase, have knowledge of such facts and circumstances as would make her purchase of the note, with the intention of enforcing it, an act of bad faith on her part? Yes.

"*Third.* Did plaintiff, at the time of her purchase,

know of any matters or circumstances impairing the note's validity in the hands of F. H. Leavenworth & Co.? Yes."

The sole question in the case is whether or not there was any evidence to support the findings. Plaintiff testified that she paid $100 for this note, about two weeks after the date of its execution. On cross-examination she testified that she had at about the same time taken two other notes of this same character, made by other agents, whom she did not know, and of whose responsibility she knew nothing, except what her grandson had then told her. These two notes were of the same amounts, and were taken by her at the same discount, and for these two notes she exchanged notes which she held against other parties. One of the notes so exchanged was for $110, and for that note she received one of the fence notes and $10 in cash. She claims to have had no knowledge of the business of F. H. Leavenworth & Co., or of its nature, or of the nature of the contracts which were entered into by said firm with agents; but the defendant offered testimony tending to show that on the trial in the justice's court she had testified that she knew at the time she took this note that there was a fence contract behind the note, and another witness testified that she had told him, in effect, that her grandson had agreed to protect her in the matter. F. H. Leavenworth was at plaintiff's house, more or less, during these deals, for three months. E. A. Leavenworth had made her house the base of his operations for a part of that time. The extreme ignorance which she professes to have dwelt in concerning the business carried on from her own house, by her own kith and kin, is in itself suggestive. She was contradicted by several witnesses upon material points. All of these notes appear to have been made by responsible farmers. The three taken by her were discounted at the rate of 17 per cent. The very first note taken by her, and one of the

others, she exchanged other notes for, so that the apparent object of the deals was not cash. There was testimony tending to show that plaintiff knew that the note was a contract note; that there was a contract behind it. We think that there was sufficient to go to the jury upon the question of the *bona fides* of the plaintiff. That another had actual knowledge can only be shown by proof of facts from which such knowledge may be fairly inferred. If plaintiff knew that there was a contract behind this note, there was certainly sufficient, taking that knowledge in connection with the other circumstances, to put her upon inquiry.

The consideration of this note was the agreement. Both must be construed together. The consideration having failed, plaintiff could not recover. *Sutton v. Beckwith,* 68 Mich. 303, 310.

We find no error in the record, and the judgment is affirmed.

The other Justices concurred.