A. P. COOK CO. *v.* BELL.[1]

1. Mortgages—Agreements Back—Trusts.

    B. executed a mortgage to C., and at the same time deeded
    him certain lands located in W., under an agreement reciting
    that: "I, the said C., hereby agree to sell said lands in W.
    for the best prices that I can obtain, and, after deducting
    costs and expenses and reasonable charges for selling the
    same, to apply the proceeds upon said mortgage; said sales
    subject to the advice and consent of said B." One year later,
    B., at C.'s request, deeded other lands in W. to C., who was to
    "account to B. for net proceeds after deducting expenses of
    all kinds, and apply balance upon his indebtedness." *Held,*
    that the mortgage, deeds, and agreements back constituted
    C. a trustee of the lands in W. for the benefit of B.

2. Same—Maturity of Debt.

    Construing the instruments together, the mortgage was not to
    become due until the mortgagee had discharged the obliga-
    tions cast upon him by the agreements.

3. Same—Laches of Trustee—Decree on Foreclosure.

    C., by his laches, having permitted the lands in W. to be
    sold for taxes, and lost to the mortgagor, was charged in fore-
    closure proceedings with their value; and, it appearing that
    the amount equaled the mortgage debt, the foreclosure bill
    was dismissed by the circuit judge. *Held,* that the decree
    was proper.

Appeal from Jackson; Peck, J. Submitted June 11,
1897. Decided September 14, 1897.

Bill by the A. P. Cook Company, Limited, against
Marietta A. Bell, Henry C. Bell, John C. Sharp, and
others, to foreclose a mortgage. From a decree dismissing
the bill, complainant appeals. Affirmed.

---

[1] Rehearing denied November 23, 1897.

*Taggart, Knappen & Denison* and *Parkinson & Campbell,* for complainant.

*Charles A. Blair,* for defendant Marietta A. Bell.

*Thomas A. Wilson,* for defendant Sharp.

LONG, C. J.   On November 19, 1873, Addison P. Cook filed the original bill in this case against Henry C. Bell and Marietta A. Bell for the foreclosure of a mortgage of $3,-590, given January 5, 1866, by the defendants Bell to Mr. Cook upon 185 acres of land in Jackson county, this State.   Defendants answered, admitting the execution and delivery of the bond and mortgage in question, and alleging in defense that they had conveyed to Mr. Cook a large amount of land in Wisconsin, the latter agreeing to sell the lands for the best prices he could obtain, and, after deducting the costs and expenses and reasonable charges for the selling of the same, to apply the proceeds on the mortgage, such sales to be subject to the advice and consent of Henry C. Bell; alleging that Mr. Cook had had numerous opportunities to sell such lands, and had refused to sell, and apply the proceeds on the mortgage; that defendants did not know how much Mr. Cook had sold, and what he had received; but alleging that he had in some manner converted to his own use the whole of said lands, and thereby become liable for the value thereof; and that defendants should have the same applied in payment of such bond and mortgage.   Replication to defendants' answer was duly filed.   Defendants took certain proofs before a circuit court commissioner for Jackson county, as well as depositions of certain witnesses in Wisconsin under commission.   On August 10, 1877, commission was issued for taking depositions of complainant's witnesses in Wisconsin.   July 1, 1878, an order closing proofs was entered by defendants' solicitors.   On September 23, 1878, a stipulation was made setting aside the order closing proofs, and providing for an extension of time for taking proofs until the 1st day of the following July.

No further effort seems to have been made for the purpose of obtaining a decree until June 9, 1891, when the A. P. Cook Company, Limited, filed a bill in the nature of a bill of revivor and supplement against the original parties, together with John W. Sharp and John C. Sharp, setting up the filing of the original bill, and the various proceedings thereunder; alleging the assignment by Mr. Cook to the complainant of the bond and mortgage under foreclosure; alleging that, since the filing of the original bill, defendant Marietta A. Bell had conveyed to John W. Sharp her interest in the mortgaged premises, and that the title of John W. Sharp is subordinate to the mortgage rights of the complainant; that the defendant John C. Sharp is in privity with defendant John W. Sharp, and has, since the filing of the original bill of foreclosure, for the purpose of defeating complainant's mortgage interest, purchased certain portions of the mortgaged premises upon tax-title sales; that the defendants Sharp are colluding together in holding the original title, and in the possession of the premises, and in permitting the lands to be sold for taxes, and in the purchase of the tax titles in the name of John C. Sharp, who was under the alleged duty of paying the taxes; and that defendants Sharp are estopped from asserting the tax purchase as an adverse and paramount title against the complainant's mortgage interest. The bill prays that the complainant may have the benefit of the proceedings in the original suit, and the same relief Mr. Cook could have had but for the assignment, and that the rights of both defendants Sharp, including the tax titles, may be held subordinate to complainant's mortgage. The bill contains the usual prayer for foreclosure and sale.

The bill was taken as confessed by Henry C. Bell. Defendant Marietta A. Bell answered, alleging payment of the bond and mortgage by reason of the alleged conversion of the Wisconsin lands by Mr. Cook, that she is still the owner of the mortgaged lands in Jackson county, and that defendant John W. Sharp holds a conveyance

from her simply as mortgagee on account of certain advancements.    Defendants Sharp answered, alleging:

1. That the proofs in the original suit were closed, and that that suit cannot be revived by this bill.

2. That the course taken to revive the suit is not proper.

3. That the mortgage is barred by the statute of limitations.

4. That the original suit had been abandoned by Mr. Cook.

5. That Mr. Cook had not a perfect title to the Jackson county lands conveyed to defendants Bell, but that one Stranahan claims title thereto, and is prosecuting a suit in ejectment therefor.

6. That Mr. Cook had permitted the Wisconsin lands, by connivance with parties in Wisconsin, or by his neglect and default, to be levied upon and sold by virtue of an execution issued upon a judgment rendered against him in the county of Wood, in the State of Wisconsin.

7. That by such proceedings the mortgage has been fully paid.

8. That the defendant John C. Sharp has purchased and is entitled to hold the tax titles referred to adversely to complainant's interest.

Replications were filed to these answers, and a claim of right to examination of witnesses in open court entered. In September, 1894, a hearing in open court was had in part, when John W. Sharp died testate, and the suit was revived against his executor, John C. Sharp, and his widow and heirs at law.    Thereafter the case was heard in open court, and the testimony closed in November, 1895.    At the close of the testimony, the circuit judge filed a written decision, concluding:

1. That the complainant is entitled to maintain its present bill as an original bill in the nature of a bill of revivor and supplement, and as assignee of Mr. Cook is entitled to the benefit of the original suit, and of the proceedings therein; that there has been no delay, laches, or other fact sufficient to defeat the complainant's right to the foreclosure of the mortgage under the present bill.

2. That, as between defendants John W. Sharp and Marietta A. Bell, the deed given by the latter to the

former was in fact a mortgage to secure Sharp for moneys advanced and to be advanced to her by him.

3. That defendant John C. Sharp cannot, in this suit, insist upon his tax deeds as against complainant's mortgage rights.

4. That, as against the amount of the mortgage and interest, defendants are entitled to a deduction on account of the Wisconsin lands conveyed by defendants Bell to Mr. Cook, and that the value of the Wisconsin lands at the time of their sale upon execution was greater than the amount then due on the mortgage.

A decree was entered dismissing complainant's bill, from which complainant appeals.

The agreement made between Mr. Bell and Mr. Cook in reference to the Wisconsin lands is as follows:

"Memorandum of agreement between Henry C. Bell and Addison P. Cook, viz.: That whereas, the said Bell has this day deeded to said Cook certain lands in the State of Wisconsin, and also received a deed of certain lands in Jackson county, Michigan, and executed a mortgage upon the same: Now, therefore, I, the said Cook, hereby agree to sell said lands in Wisconsin for the best prices that I can obtain, and, after deducting costs and expenses and reasonable charges for selling the same, to apply the proceeds upon said mortgage; said sales subject to the advice and consent of said Bell."

This contract was dated January 5, 1866, and included over 1,000 acres of land. It is claimed by the defendants that, at the time of the conveyance, Cook was informed by Bell that there were taxes against these lands, and that Bell had never seen them; that, in the fall of the same year, Mr. Cook went to Wisconsin, made inquiries about the lands, found that they were valuable, paid the taxes upon a part of them, and employed attorneys to pay the balance of the taxes, which he thought would amount to about $1,400; that he then obtained an abstract of the lands; that upon Mr. Cook's return from Wisconsin he stated these facts, and that he had employed attorneys in one or more actions then pending against him in Wood county, Wis., and to settle with parties holding titles upon

some portions of these lands, and to look after and pay the taxes upon the lands generally in said county; that at that time he stated to Mr. Bell, "You have other lands out there which you did not deed to me," and wanted Bell, some time when he came to Brooklyn, to make him a deed of the balance. On January 9, 1867, these other lands were deeded to Cook, being about 665 acres, and being termed "farming lands, intermingled with hard wood and pine." They are described in a memorandum made by Mr. Cook at that time, which memorandum, after a description of the lands, reads:

"Deeded to A. P. Cook, 9th of January, 1867, to account to Henry C. Bell for net proceeds after deducting expenses of all kinds, and apply balance upon his indebtedness to me."

The defendants' proofs tended to show that, after this second deed had been made to Cook conveying these Wisconsin lands, the defendants Bell had further conversations with Cook about the lands, and wrote to him to make sales, and that Cook would answer that he must attend to it, that he had been busy, and that his business had been such that he had neglected it; that at one time Cook was offered $600 for 80 acres of these lands; that he refused to sell, and stated he could get more for it by waiting; that his attorneys at Grand Rapids, Wis., wrote him in January and February, 1867, concerning the suits commenced against the lands; that he neglected to answer either of the letters until June 1st thereafter, when he wrote, giving instructions to pay all taxes on the Bell lands; that his attorneys, on June 10th, replied that they would give the matter immediate attention, and would draw on him for the amount necessary to settle; that they did draw for $1,000; that Cook did not answer these letters, letting the draft go back unpaid; that suit was then commenced against Cook by attachment in Wisconsin for the amount expended, and process was personally served upon Cook in this State; that Cook paid no attention to the suit, and plaintiffs obtained judgment August 10, 1868, for $2,351,

upon which execution was levied upon the lands deeded by Bell to Cook, and they were sold to one Kingston for $2,400 on December 5, 1868; that the title to the lands under this sale became absolute on February 5, 1871; that Cook never asked Bell from first to last for any money to pay the taxes on these lands; that he never told Bell that a draft had been drawn on him on account of these taxes; that he never suggested to Bell to go to Wisconsin to look after the taxes or the lands; that he never explained to Bell what the nature of the suit was, but simply told him that the parties he had hired to look after these lands had sued him, or commenced suit; that Cook never gave Bell any notice of his intention to abandon the lands; and that by reason of Cook's negligence the lands became lost to defendants Bell.

Several computations were made by counsel upon both sides, showing the value of the Wisconsin lands, and the amount of the mortgage and interest; and the complainant contends that the court was in error in finding that the lands were sufficient to pay the amount of the mortgage; while, upon the other hand, counsel for defendants Bell contends that the value of the lands largely overpaid the mortgage in suit. We shall not discuss the testimony as to these values, as, from a careful examination, we are satisfied that they equaled, if they did not exceed, the amount of the mortgage.

The legal effect of taking the mortgage, the deeds to Cook, and the agreements back was to constitute Cook a trustee of the Wisconsin lands for the benefit of defendants Bell. *Carter* v. *Gibson*, 29 Neb. 324 (26 Am. St. Rep. 381). It is evident from the agreements between the parties that this mortgage was to be paid from the proceeds of the sale of these Wisconsin lands. It was not expected the defendants Bell would be called upon to pay the mortgage except in the manner provided in the contracts. The first contract was contemporaneous with the giving of the mortgage, and that contract was supple-

114 Mich.—19.

mented by the one of January 9, 1867. The last contract was given for the very purpose of enabling Cook to dispose of the Wisconsin lands, and obtain his pay on the mortgage from the proceeds. Cook accepted this trust, and it became his duty to faithfully discharge it. The A. P. Cook Company, Limited, obtained no greater rights under the transfer of the mortgage to it than Mr. Cook had. That company does not stand in the position upon this record of a *bona fide* purchaser. By the terms of the mortgage and the agreements, taken together, the mortgage was not to become due until the mortgagee had discharged the obligations cast upon him by the agreements, which became a part of the mortgage. *Keagle* v. *Pessell*, 91 Mich. 618. It must have been contemplated between the parties that the Wisconsin lands should be sold, and the proceeds applied, before the maturity of the mortgage. It was held in *Fink* v. *Chambers*, 95 Mich. 508, that the nonperformance by the payee in a note of an agreement, in consideration of which the note was given, will prevent a recovery on the note by any one not a *bona fide* holder of the paper for value. It was also held in *Sutton* v. *Beckwith*, 68 Mich. 303 (13 Am. St. Rep. 344), that an agreement made at the time of the execution and delivery of a promissory note, to be performed before its maturity, and forming its real consideration, is a part of the transaction, and, as between the parties, its performance is a condition precedent to the enforcement of the note. We think the testimony preponderates greatly in favor of the defendants' contention that Mr. Cook, as trustee, by his laches, and in the nonperformance of his duties as trustee, lost the lands to the defendants, where it was his duty, as such trustee, to have preserved them, and to have made sales for the benefit of defendants Bell. There are 80 acres of land the title to which stands in Mr. Cook's name. It is the same 80 acres which at one time he could have sold for $600, and which he refused to sell, although urged to do so by Mr. Bell. He should therefore be charged with

this 80 acres.   Having assumed the trust, he could not throw it off or ignore it at his own volition.

In this proceeding the complainant has simply been called to an accounting—such as Mr. Cook should have made—for the purpose of showing whether the mortgage had or had not been paid.   If Mr. Cook had diligently discharged his trust, there can be no doubt it would have been paid, and the complainant cannot have any greater rights than Mr. Cook could have claimed.   We think the court below was not in error in determining that the mortgage had been paid and discharged, and that decree will be affirmed, with costs of this court.

GRANT, MONTGOMERY, and MOORE, JJ., concurred. HOOKER, J., did not sit.