CAREY *v.* NISSLE.

1. WITNESSES—IMPEACHMENT— CONTRADICTORY STATEMENTS—EVI-
DENCE—ADMISSIBILITY.

Where the payee of a note sued on has testified to its execution
and its assignment to plaintiff, and denied stating, after the
date of the alleged assignment, that he still owned the note
and had deposited it as collateral, evidence is admissible that
he did so state, the testimony not being received as substan-
tive proof of title in him, but for the purpose of impeach-
ment.

2. BILLS AND NOTES—BONA FIDE PURCHASERS—FAILURE OF CON-
SIDERATION—EVIDENCE.

Where, in an action on a note by an indorsee, there is evidence
tending to show that plaintiff is not a bona fide purchaser,
the contract accompanying the note and evidence of a breach
of the guaranty contained therein, are admissible.

3. TRIAL—ARGUMENT OF COUNSEL—SUPPORT IN EVIDENCE.

In an action on a note given for the price of a horse, statements
of counsel for the defendant that the horse had been returned
according to contract for breach of the guaranty under which
he was sold, examined in connection with the evidence, and
*held,* to be properly supported by the evidence.

Error to Washtenaw; Kinne, J. Submitted June 7,
1906. (Docket No. 34.) Decided July 23, 1906.

Assumpsit by Alice Carey and Ella Carey, copartners
as Carey Sisters, against William F. Nissle and others on
a promissory note. There was judgment for defendants,
and plaintiffs bring error. Affirmed.

This is a suit upon a promissory note of $233.33, of
which the defendants were makers and W. P. Stimmel
and L. Harris, under the name of Stimmel & Harris, were
payees, and indorsed by them to the plaintiffs without re-
course. The defendants reside at Saline, Mich., and the
plaintiffs and Stimmel and Harris reside at Plain City,

Ohio. The note was one of three executed by these defendants to Stimmel & Harris, and by them assigned to the plaintiffs. The notes were given in part payment of a stallion for the price of $1,500. The notes were joint and several. There were to be 15 subscribers for the purchase of the horse at $100 apiece. The contract for the sale of the horse contained a guaranty that he would "get 50 per cent. of breeding mares foaled by side." In case the guaranty should fail, Stimmel & Harris agreed to replace him with another horse of the same breed, price, and equal merit, upon delivery of the above-named horse, if as sound and in as good condition as when purchased.

Defendants gave evidence tending to show fraud on the part of Stimmel & Harris and of their agent O'Hara, in the sale of the horse, of a breach of warranty, of the surrender of the horse, demand of another to take its place, and the refusal of Stimmel & Harris to comply therewith. The evidence on the part of defendants also disclosed that Harris was the principal man in the transaction; that he was in the employ of the plaintiffs on their farm in Ohio; lived with them; had been in the employ of their father before his death; that plaintiffs indorsed Stimmel & Harris' note for the purchase of the horse; and that they knew that the basis of the notes was a horse trade.

Plaintiffs claimed to be bona fide purchasers. They gave evidence tending to show that they indorsed the note here in suit and the other two; that they took them to the bank in Plain City, indorsed them, obtained the money, and that that money was used in payment of the notes they had previously indorsed for Stimmel & Harris. On cross-examination of Alice she testified as follows:

" *Q.* What was the agreement between you and Mr. Harris as to what he would do in case you failed to recover upon those notes? Did he agree to pay you back your money?

"*A.* Yes, sir.

" *Q.* And wasn't it because of that agreement that you let him have the money, and has not he paid a portion of it back to you?

"*A.* Of course we will not lose it.

" *Q.* Has not he paid part of it back?

"*A.* No, sir.

" *Q.* Do you hold his note for it?

" *A.* I am not decided. I am not prepared to say.

" *Q.* And isn't it because he gave you his note for that amount, or agreed to pay it back to you, that you made the indorsement of those notes ' without recourse?'

" *A.* Yes."

She endeavored to correct this testimony upon redirect examination. Her testimony on cross-examination, if true, had an important bearing upon the question of bona fides. Its truth was for the jury. Verdict and judgment were rendered for the defendants.

*Frank A. Stivers* (*M. J. Lehman*, of counsel), for appellants.

*Frank E. Jones* and *John P. Kirk*, for appellees.

Grant, J. (*after stating the facts*). 1. The court correctly instructed the jury upon the law of the case, stating the theory of each of the · parties. With those principles of law the profession is familiar. This case in many of its facts is similar to *Fink* v. *Chambers*, 95 Mich. 508, and is ruled by it. Of the allegations of error three only need discussion. Harris was a witness for the plaintiffs to prove the execution of the notes and the assignment by him and Stimmel to the plaintiffs. On cross-examination he was asked whether he had not stated to certain parties that he still owned the notes; that he had deposited them in the bank as collateral and had obtained money upon them. He denied making such statements. The defendants were permitted to introduce testimony that he had made such statements. Counsel for plaintiffs insist that this testimony was a violation of the rule that the statements of a vendor or assignor, after he has parted with his title, are inadmissible to affect the rights of the vendee or assignee, citing *Muncey* v. *Insurance Office*,

109 Mich. 542; *Krementz* v. *Howard*, 109 Mich. 466; *Fenton* v. *Miller*, 108 Mich. 246, and other cases. This testimony was not received by the court as substantive proof, but for the purpose of impeachment. While Harris was not asked on direct examination what consideration he received for the transfer of the notes, yet his testimony that he had transferred them to the plaintiffs opened the door for an inquiry as to the consideration and ownership of the notes. No error was committed by the ruling of the court.

2. Error is also assigned upon the introduction of the contract containing the guaranty. If there had been no evidence to show that plaintiffs were not bona fide purchasers this would have been incompetent. But purchasers with notice or with such knowledge as should put them upon inquiry, take subject to the same defense that could be made against the original payee. In other words, such holders of commercial paper stand in no better position than would their assignors.

3. Complaint is made of the following argument by defendants' counsel to the jury:

"I stated that the horse had been returned to Mr. Harris, and that if he has not disposed of him he has him at the present time."

This and similar language is based upon the argument that there was no evidence tending to show that the horse had been returned. The evidence disclosed that upon the failure of the horse to comply with the guaranty the defendants returned him by one Burkhardt to Harris, upon the farm of the plaintiffs at Plain City; that Burkhardt informed Harris that he had brought the horse back; that Harris replied that he could not do anything until he met his partner who would be back at 5 o'clock. Burkhardt further testified:

"I asked where we could leave the horse. He (Harris) asked the liveryman if he had room for the horse, and he said he could make room. That is where I left the horse. We also agreed to meet in the city."

He further testified that Harris and Stimmel didn't meet him as agreed, and that the next morning he again went to the farm, found Stimmel and Harris, requested another horse, and they replied that "they would not do anything about the horse." This was evidence tending to show a return of the horse, and the demand for another under the terms of the contract.

The judgment is affirmed.

Carpenter, C. J., and McAlvay, Hooker, and Moore, JJ., concurred.