## CLARE COUNTY SAVINGS BANK *v.* FEATHERLY.

1. BILLS AND NOTES — EVIDENCE — PAROL AGREEMENT TO VARY TERMS OF WRITING—COLLATERAL CONTRACT.

   While parol evidence is inadmissible to vary or contradict a valid written contract, as a promissory note, it is not incompetent to show in defense of an action against an accommodation indorser that the payee agreed to look after the insurance, and keep it in force upon the maker's stock of goods and fixtures, but failed to see that it was kept in force: the agreement did not contradict or vary the terms of the note; it was a distinct collateral undertaking although a part of the same transaction.[1]

2. SAME—PAROL EVIDENCE—RECOUPMENT—BANKS.

   The rule admitting evidence of a collateral agreement is especially applicable where such agreement operates as an inducement for entering into the contract, and defendant is entitled to recoup his damages for breach of the collateral undertaking in an action by the payee, a bank, against him on the note.

3. SAME—DIRECTED VERDICT.

   It became a question of fact whether such arrangement was made, upon plaintiff's testimony, disputed by defendant, that he signed the note on the express condition that the payee should look after the insurance and hold the policy as security for the debt.

4. SAME—WAIVER OF CONDITION.

   The indorser did not waive the alleged condition where he knew of the fact that the insured property had been moved, but had no knowledge that consent had not been secured from the insurer.

5. SAME—REQUESTS TO CHARGE—INSTRUCTIONS.

   The court rightly declined to instruct the jury as requested by defendant, that if the indorser desired to be protected by the insurance it was his duty to see that it was kept in force, since his contract with defendant relieved him of the duty.

Error to Charlevoix; Mayne, J.   Submitted October

---

[1] For the general rule that parol evidence is not admissible to vary, add to, or alter a written contract, see note in 17 L. R. A. 270.

16, 1912. (Docket No. 116.) Decided December 17, 1912.

Assumpsit by the Clare County Savings Bank against Gerald Featherly, Blanche Featherly, and Frank Coleman upon a promissory note. Judgment for plaintiff as to two defendants, but in favor of defendant Coleman. Plaintiff brings error. Affirmed.

*C. W. Perry*, for appellant.

*Harris & Ruegsegger*, for appellees.

STONE, J. The plaintiff sued the defendants to recover the balance due upon a promissory note bearing date December 20, 1909, wherein the defendants promised to pay to the plaintiff, or order, six months after date, the sum of $700, with interest at the rate of seven per cent. per annum. The note was signed by the three defendants. There had been indorsed as paid upon the note the sum of $469.40 on May 17, 1911. Default after personal service was regularly entered as to the defendants Gerald L. Featherly and Blanche Featherly. The defendant Frank Coleman pleaded the general issue and gave notice that he would prove thereunder that he signed the note as surety only, for the other defendants, with the knowledge of the plaintiff, and that he only did so because the other defendants had given a chattel mortgage to the plaintiff on a stock of merchandise and fixtures at Clare, Mich., to secure the payment of said note, and that the other defendants and the plaintiff had the stock of merchandise and fixtures insured against loss or damage by fire and payable to plaintiff, as its interest might appear, and, at the time this defendant Coleman executed and delivered said note as surety, the plaintiff agreed with him that it would keep its mortgage and insurance as aforesaid on said property in force and effect and in its possession and control for the protection of the plaintiff, as well as of this defendant, until the payment of said note; that the

amount of said chattel mortgage was $700, and the amount of said insurance was above the amount of the note sued upon in this case. Yet the plaintiff, well knowing the premises, did not keep said insurance against loss and damage by fire and lightning on said stock of merchandise and fixtures in force and effect, but expressly permitted said stock of merchandise and fixtures to be removed to other premises not covered by said policy of insurance, although it had said policy of insurance in its possession and control at all times, and agreed to keep the same in force and effect, and neglected to have said insurance transferred to the new location where said stock of merchandise and fixtures had been transferred, whereby said insurance became void and of no effect; and that thereafter, and while said insurance policy was in the custody and control of the plaintiff, the plaintiff had not caused the same to be transferred so as to cover such stock of merchandise and fixtures at such new location; that said stock of merchandise and fixtures was totally destroyed by fire under such circumstances that the amount of said insurance would have become available to the plaintiff, and would have been applied in full payment of the note herein sued on, had plaintiff caused such insurance to be transferred to such new location before such fire; and that, because said policy of insurance had not been transferred so as to cover said property in such new location, the insurance company which issued said policy denied liability, and only paid a small portion of the amount of said loss, and that because of the neglect, as aforesaid, of the plaintiff, this defendant has been damaged to a large amount, to wit, the amount sued upon in this cause, and plaintiff should therefore not recover.

The case came on for trial before a jury, and the plaintiff offered in evidence the promissory note and gave evidence as to the amount due thereon; and it being admitted that the defendants Gerald L. Featherly and Blanche Featherly received the money from the plaintiff for which

said note was given, and that the defendant Frank Coleman signed said note for the purpose of securing the payment thereof to the plaintiff, it rested its case.

The defendant Coleman, to maintain and prove the issue on his part, produced the following evidence in substance: Gerald L. Featherly was sworn. He testified that the defendant Frank Coleman was his father-in-law, and that the witness was in the retail grocery business in Clare, Mich.; that the defendants Featherly got the $700 represented by the note, and that the negotiations occurred in the office of the plaintiff, and that Mr. Sutherland, the cashier, and Mr. Coleman were present at the time. The following occurred:

" *Q.* What was said by Mr. Coleman about signing the note with you ?"

This was objected to by the plaintiff as immaterial for the reason that what was said was merged in the signing of the note. The objection being overruled, and an exception taken, the witness testified as follows:

" *A.* Mr. Coleman—Mr. Sutherland and myself were present—made an agreement, as I understood them, that he would sign the note provided the bank would look after the interest of the stock of groceries and so forth, or Featherly & Co., rather, and specifying at that time that he would not sign the note under any other condition or consideration, and Sutherland stated that he would accept the terms and conditions, and that he would look after this business, being as it was directly across the street. Mr. Sutherland stated that, in case anything should not be working as it should be at any time, he would notify Mr. Coleman immediately. Mr. Coleman stated that he would not sign the note or the papers unless Mr. Sutherland looked after the insurance papers along with the other interests of the business. There was an insurance on the stock at the time. The insurance was in favor of William Ryan, the man from whom I purchased the goods. * * * I did not see the policy, but knew the bank had an insurance policy on the stock. The value of the stock was between $1,100 and $1,200. I made proofs of loss."

On cross-examination he testified as follows:

"There was an insurance policy on the stock at the time I bought it which run three or four months longer, and when that run out I took out a new policy and paid the premium. I arranged it with Mr. Maynard, the insurance agent."

The witness testified that he had been notified that a settlement had been made of the insurance at $469.40. The defendants Featherly had given the president of the Clare County Savings Bank full power to settle the loss caused by the fire on December 22, 1910. He further testified that Mr. Coleman was at Clare at the time of the . fire, and had been there three or four days; that he came there to see about the business, and was in the store where the goods were, and knew they had been moved from their former location; that Mr. Coleman was in Clare at the time the stock was bought and at the time just before the fire only. He made no objection to the goods being moved. On redirect examination the witness said:

"I talked with Mr. Sutherland about moving the stock up the street. I asked him his opinion of moving the stock from the present location to the other building, and he said he thought it would be a better location and advised me to move, and gave me a verbal permit to do so. He was in the store a couple of times after the removal. The place we moved from was diagonally across the street corner from the bank. I had no talk with Mr. Sutherland after the removal about the stock or the moving. I asked him at the time I got the permit whether or not he would look after the other interests that were there to be looked after, and he said he would. The same morning of the fire, or the following morning, Mr. Sutherland said to me, 'You didn't have your insurance papers transferred,' and I said, 'I thought you were looking after those papers and business,' and he said that he did not know that he had the insurance policy at all. He afterwards showed me the policy."

The witness further testified that he spoke to Mr. Maynard, the insurance agent, about taking out the policy of insurance (renewal) that was on the goods at the time of

the fire, and he said he would renew the insurance and would deliver the policy to the bank. "I paid him the premium."

Defendant Coleman, being sworn in his own behalf, testified that he lived at Horton's Bay in said county, and recalled being at Clare at the time he signed the note.

"*Q.* And before the signing of that note, or at the time of it, did you have any talk with the cashier of the bank?
"*A.* Why, yes, sir.
"*Q.* Do you know who the cashier was; do you recognize him here in this room?
"*A.* Yes, sir.
"*Q.* What is his name?
"*A.* Mr. Sutherland.
"*Q.* Now state whether or not you made any conditions of signing this note or not.
"*A.* Yes.
"*Q.* State to the jury what they were."

This was objected to on the ground that the writings were the best evidence, and the further objection that the conditions that counsel has stated, if imposed, would make Mr. Sutherland the agent of Mr. Coleman, making him the agent for both parties, which is not allowed. This objection was overruled, the court remarking to defendant's counsel:

" As I understand it, you claim a special agreement at the time, under which this witness was to be protected?
"*A.* Yes, sir."

An exception being noted by plaintiff's counsel, the witness answered as follows:

" Why, after the goods were sold, I and Mr. Featherly went over to the bank to make arrangements for the money, and we talked matters over with Mr. Sutherland. He said it would be all right. * * * If I would sign the note it would be all right, and I told him then that if he would hold the insurance papers as security on the goods, on this note and things, that I would sign the note, and that I would not sign it under any other conditions. Well, he said he would. * * *

"*Q.* What was said that they were to do with the insurance?

"*A.* He was to hold the insurance policy over the goods and over this note in case of fire. He was to hold the insurance policy over that. I wouldn't sign these papers under any other conditions.

"*Q.* In your talk with Mr. Sutherland, who was to look after the placing of the insurance in keeping it in force on the stock?

"*A.* Mr. Sutherland.

"*Q.* Well, I know; but what did Mr. Sutherland say about it, and what did you do and say about it, rather?

"*A.* I told him I would not sign the papers unless he would look after the business and let me know if anything went wrong, and he said he would, and I told him he must hold the policy as security over the note and the goods, and he said he would. * * *

"*Q.* What do you know about the moving of the stock from one store building to the other?

"*A.* I did not know anything about it at all until after they were moved quite awhile.

"*Q.* Just before the fire you were down there to Clare?

"*A.* Yes.

"*Q.* What talk did you have with Mr. Sutherland at that time about it?

"*A.* Well, I went down there, and Gerald talked over the moving of the goods up to Boyne City, and I went down and saw Mr. Perry and Mr. Sutherland and talked the matter over with them, and they gave me an extension on the note for 60 days, I think it was, with the privilege of moving the goods to Boyne City, and the next morning I was going to start home and erect a house I had in Boyne City there, to put the goods in, and I got up the next morning and the thing was all lying in ruins.

"*Q.* Was anything said about the insurance at that time?

"*A.* No, sir; there was not."

Albert E. Maynard was sworn on behalf of the defendant and testified that he was the insurance agent that negotiated the insurance on the goods in question and wrote the policy; that he transacted the business with Mr. Featherly, but could not remember whether he delivered the policy to him or not; that it was understood that

the bank was to have the custody of it; that he made the policy payable to the bank according to instructions.    It appeared that the whole amount of insurance that was obtained upon the policy was applied and indorsed upon the note in question.    It further appeared that the insurance was settled by the plaintiff's agent or attorney for the sum of $469.40.

At the close of the testimony, the plaintiff moved the court to direct a verdict for the plaintiff for the amount due upon the note.    This was refused by the court, whereupon the plaintiff requested the court to charge the jury as follows:

"*First.* That there is no evidence on the part of the defendant Coleman that releases him from the obligation to pay the full amount due upon the note.

"*Second.* That his knowledge of the removal of the goods up to the time of the fire without objection, or without direction to the bank, was a waiver of any claims he might have upon the bank in the way of charging them with failure to perform their duty under his assumed agreement.

"*Third.* That it was his duty primarily to look after the insurance of the goods himself, if he desired to be protected by the insurance.

"*Fourth.* That he could not delegate that authority to the cashier of the bank, who was the representative of the other party to the contract, because it would make him the agent of both parties."

The trial court submitted the case to the jury and stated the claim of the defendant Coleman to be as follows:

"It is the claim of Mr. Coleman that it was the duty of the bank, under this special agreement, to notify him of this change in the location of the goods, and their duty to see that this insurance was kept good—was kept alive— and that it was their duty to have this policy indorsed by the local agent and approved by the company with a permit to change the location of the goods from one building to another, or that a new policy was taken out, if that were necessary.    * * *    If you find in accordance with the claim of Mr. Coleman, then you will determine the amount that Mr. Coleman has lost by reason of the fail-

ure of the bank to keep its agreement with him; and, if you find that it amounts to the sum of $258.91, then you will bring in a verdict of no cause of action as to Mr. Coleman. I understand that it is admitted by counsel that the Featherlys are liable for this balance of $258.91."

The jury returned a verdict for the plaintiff against the defendants Gerald L. Featherly and Blanche Featherly, and in favor of the defendant Coleman.

The plaintiff has brought the case here upon writ of error.

(1) Its first assignment of error is to the effect that the court erred in overruling plaintiff's objection to the following question put to the witness Gerald L. Featherly:

"What was said by Mr. Coleman about signing the note with you?"

(2) That the court erred in overruling the plaintiff's objection to the following question put to the witness Frank Coleman:

"Now, at the time, state whether or not you made any conditions of signing this note; state what they were?"

(3) That the court erred in refusing to grant the motion of plaintiff to direct the jury to find a verdict against all of the defendants for the reason that there was no evidence on the part of the defendant Coleman tending to show that he was released from liability upon the note in question.

(4) The fourth, fifth, sixth, and seventh assignments respectively allege that the court erred in refusing to give each of plaintiff's requests as hereinbefore set forth.

(5) The eighth assignment of error is to the effect that the court erred in its instruction to the jury as follows:

"But if the evidence preponderates in his favor, which means if you believe that evidence in preference to the evidence which is opposed to it, or against it, then he has met this requirement of the law."

The plaintiff and appellant has argued the case under the two leading questions: (1) Whether there was any

testimony in the case to base a verdict upon in favor of the defendant Coleman; and (2) whether any failure on the part of the plaintiff to perform any duty claimed by defendant was not waived by his attending to the business after the goods were moved to a new location, and asking and consenting to an extension of the note, and not looking to the insurance company himself, while there upon the ground, if he wished to be protected.

1. Was there any testimony making a case for the jury? We think the meritorious question in the case is whether the parol agreement claimed by the defendant Coleman to have been made with the plaintiff's cashier, at the time the former signed the note, can be shown, or whether all such conversation or agreement was merged in the note itself. It is a general rule of law that parol evidence is inadmissible to vary or contradict a valid written contract; therefore, if a bill or note be absolute upon its face, no evidence of a verbal agreement made at the same time qualifying its terms can be admitted. This doctrine is elementary and may be said to be fully covered by numerous decisions of this court. *Phelps* v. *Abbott*, 114 Mich. 88 (72 N. W. 3). Our first impression was that the case was governed by this doctrine, but a more thorough examination of the question has led us to the conclusion that the evidence offered and received of the claimed agreement that the bank would look after the insurance and keep it in force upon the stock of goods and fixtures was not an agreement in any manner to alter, contradict, or vary the terms of the promissory note, but that it falls within the class of cases which holds that it is not a violation of the rule to show by extrinsic evidence an entirely distinct and collateral contract, although being a part of the same transaction. 2 Jones on Evidence (1st Ed.), § 507, and cases there cited; *Brent's Ex'rs* v. *Bank of the Metropolis*, 1 Pet. (U. S.) 89; *Phillips* v. *Preston*, 5 How. (U. S.) 278.

The doctrine is well stated in 21 Am. & Eng. Enc. Law (2d Ed.), p. 1094, as follows:

"Again, the parties to a written agreement, which is complete in itself, may at the time of its execution, or previously, have entered into a collateral parol agreement concerning some matter on which the written instrument is silent, and the rule does not preclude the proof of such collateral agreement, provided no attempt is made to vary or contradict the writing. Any independent fact or collateral parol agreement, whether contemporaneous with or preliminary to the main contract in writing, may be proved, provided it does not interfere with the terms of the written contract, though it may relate to the same subject-matter."

Many cases are there cited.

The rule excluding parol evidence to vary or contradict a writing does not extend so far as to preclude the admission of extrinsic evidence to show prior or contemporaneous collateral parol agreements between the parties. The general rule admitting evidence of a collateral agreement is especially applicable where such agreement operates as an inducement for entering into the written agreement. 17 Cyc. p. 713 *et seq.; American Building & Loan Ass'n* v. *Dahl*, 54 Minn. 355 (56 N. W. 47). In the cited case it was held that evidence of an independent agreement, made by parol between sureties and the obligee in an idemnity bond, at the time of the execution thereof, and as an inducement therefor, was competent and material on the part of the sureties and not tending to vary the terms of the bond itself. The court said:

"The agreement referred to, which the evidence in the case tended to establish, was a verbal one, and the plaintiff claims that evidence thereof was inadmissible, because tending to vary the terms of the written agreement or bond executed by the defendants. This objection, however, is clearly not well taken. * * * It [the agreement] did not tend to vary the terms of the bond, but shows the inducement and conditions upon which the defendants executed the same. It relates to the execution of the bond, and not to the terms or conditions appearing on the face thereof. The distinction is obvious, and de-

cisive of the case "— citing Brandt on Suretyship and Guaranty (2d Ed.), § 405.

See, also, Joyce on Defenses to Commercial Paper, § 323, and cases cited; *Blackwood* v. *Brown*, 34 Mich. 4; *Fink* v. *Chambers*, 95 Mich. 508 (55 N. W. 375); *Buhl* v. *Mechanics' Bank*, 123 Mich. 591 (82 N. W. 282); *Mt. Vernon Stone Co.* v. *Sheely & Co.*, 114 Iowa, 313 (86 N. W. 301); *Hand* v. *Drug Co.*, 63 Minn. 539 (65 N. W. 1081); *Germania Bank* v. *Osborne*, 81 Minn. 272 (83 N. W. 1084).

We think it was perfectly competent for the defendant to require of the bank, as a condition of the signing of the note as surety for the other defendants, that the bank should undertake and promise to see that the insurance upon the stock and fixtures was continued in force. The policy was already in existence and in the possession of the bank, and we think that such a promise, if made by the bank as an inducement to the signing of the note by defendant Coleman, was a legal, binding contract. Certainly it was to do a lawful thing for the protection of the defendant Coleman, and was based upon a sufficient consideration moving between the parties. This suit is between the original parties, and this defense is claimed by way of recoupment in the nonperformance of this oral agreement, which, it is true, was a collateral agreement, but one which related to the subject-matter with which the parties were dealing.

While the evidence is not as explicit as might be desired, yet, in our opinion, it was sufficient to carry the case to the jury.

2. The next question discussed is whether defendant Coleman waived his rights under the agreement. It is claimed that he had, because he was on the ground two or three days before the fire and made no objection to the bank for failure to perform its duty under the agreement. We have read this evidence with some care, and are unable to find that Mr. Coleman at this time had any knowl-

edge or information that the insurance had not been properly looked after, and consent for the removal of the property obtained and indorsed upon the policy. It is elementary that a party cannot waive a right that he had no knowledge of. 29 Am. & Eng. Enc. Law (2d Ed.), pp. 1093, 1094.

3. We cannot agree with counsel for appellant in his third proposition, that the court erred in not giving the third request to charge. It is the claim of the defendant Coleman that he made a special agreement with the bank to look after the insurance and to see that the same was kept in force. Therefore Coleman's primary duty to himself to look after this insurance, if any, was unimportant, if the agreement was made as he claims.

4. We find no error in the admission of the testimony. We have examined the other assignments of error, and are of opinion that they are without merit; and, finding no reversible error in the record, the judgment of the circuit court is affirmed.

MOORE, C. J., and STEERE, McALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.