## WELTNER ET AL. v. THURMOND.

CONTRACT—MISTAKE—REFORMATION—MORTGAGE—DEED FROM MORT-
GAGOR TO MORTGAGEE AND CONTEMPORANEOUS CONTRACT—DISCON-
TINUANCE OF DEBT AS PERSONAL OBLIGATION OF GRANTOR—EFFECT
OF—TRUSTS—CONTRACT BY GRANTEE OF LANDS TO SELL AND DI-
VIDE PROCEEDS—CONSTRUCTION—EXPRESS TRUST—ENFORCEMENT—
RENTS AND PROFITS—ACCOUNTING—INTEREST—LIMITATION OF AC-
TIONS—LACHES—COSTS.

1. As a part of the transaction and in consideration of the
   execution by a mortgagor of a deed absolute in form con-
   veying the mortgaged premises to the mortgagees, it was
   agreed in writing between the parties that if the property
   should sell for more than enough to pay the claim of the
   grantees, the proceeds in excess thereof should be paid to
   the grantor. *Held,* upon a review of the facts, that the
   evidence was not clear, satisfactory and convincing of a
   mistake in the contract in failing to limit the time for the
   continuance of the provision for a division of the pro-
   ceeds in case of sale, and, therefore, was not sufficient to
   authorize a reformation of the contract in that respect.

2. A party to a written contract is not in a position to com-
   plain of an alleged mistake therein as a ground for its
   reformation, where such mistake, if any, was the result
   of his inattention and negligence in not reading the con-
   tract or having it read to him, without having been mis-
   led in any way as to its contents.

3. A conveyance is not a mortgage unless given to secure the
   payment of a debt, for a debt either pre-existing or created
   at the time, or contracted to be created, is an essential
   requisite to a mortgage.

4. The plaintiff, to secure his indebtedness to the defendants,
   had executed to them two mortgages upon his real estate,
   and after the maturity of the debt, being unable to pay
   the same, conveyed the mortgaged premises to the de-
   fendants by warranty deed absolute in form for a stated
   consideration of $4,000, and as a part of the transaction
   the parties entered into a written contract referring to
   the deed and reciting its execution in payment of the
   mortgages and that the amount due to the grantees (de-
   fendants) was "about $4,000," and providing that "in
   case said property sells for more than enough" to pay
   said claim, including principal, interest, insurance, taxes

and all other legitimate and legal expenses, the excess over and above such claim should be paid to the grantor (the plaintiff). It appeared in the suit brought by the plaintiff to enforce his rights under the contract that upon the execution of the deed and contract the mortgages were released on the records as "paid in full, satisfied and discharged;" that the notes previously secured had been left by the defendants without express instructions with the attorney who drew the contract, and were not called for until several years later when the defendants obtained them for use as evidence in said suit; that the defendants had been given immediate possession of the property upon the execution of the deed and contract, and had continued in such possession; and it did not appear that either of the parties subsequent to the transaction had treated the claim of defendants as a continuing obligation of the plaintiff. *Held,* that the deed in connection with the contract was not to be regarded in equity as a mortgage giving the plaintiff a right to redeem, but that the defendants became trustees holding the title for the purpose stated in the contract, viz.: to sell the property and pay the excess of the proceeds to the plaintiff after satisfying their claim.·

5. The contract is to be construed as creating an express trust and as imposing upon the defendants the duty of selling the property.

6. The defendants, as trustees, had only such discretion as to the time of sale as would enable them to deal with the property prudently and reasonably in carrying out the purpose of the conveyance.

7. It being stipulated that if held allowable in favor of the plaintiff the sum of $250 might be allowed as rents and profits as of a stated date, and there being no showing of the taxes, insurance or other incidental expenses paid by defendants. *Held,* that, in view of the fact that though the lands might have been sold at and before the date agreed upon as the date of such allowance at a price far in excess of the claim of defendants, the latter neglected or declined to sell and used and occupied the lands, it was not unreasonable or inequitable to allow the agreed sum as rents and profits.

8. The debt previously represented by the notes and mortgages having become extinguished as a personal obligation of the plaintiff, and no agreement having been made as to the rate of interest upon the claim of defendants after

the date of the contract, the defendants were only entitled to the rate fixed by law in the absence of an agreed rate, viz.: eight per cent per annum.

9. The contract is to be construed as fixing the principal sum of the claim of defendants at $4,000, and the amount of their claim against the property is held to be that sum, with interest at 8 per cent per annum, less the sum of $1,000, received upon a sale of a part of the property, to be credited, as of the date the same was received, and $250, rents and profits, credited as of the agreed date.

10. In the case of an express and continuing trust the statute of limitations does not begin to run against the right to enforce it until repudiation or adverse possession by the trustee and knowledge thereof on the part of the beneficiary.

11. The plaintiff's right to enforce the trust was not lost by laches on his part, the repudiation of the trust by the trustees not having been brought to his knowledge until two days before the suit was commenced, and the defendants (the trustees) not having erected any improvements on the premises, or done any other act in relation thereto plainly indicating adverse possession or repudiation at an earlier date, or which would render the enforcement of the trust injurious or inequitable by reason of delay in bringing the action. The loss to defendants of a higher rate of interest or profit upon the money invested might have been obviated by them by a sale of the property, and is not, therefore, a ground for denying plaintiff's right to a sale because of delay in commencing suit.

12. The defendants having assumed the duty of selling the property to carry out the purposes of the contract, and having neglected or refused to sell during a period of years when a sale might have been made for a price largely in excess of their claim, and having repudiated the trust without performance or reasonable excuse for non-performance; *Held,* that they were not entitled in a suit for the enforcement of the trust to insist upon a strict and technical enforcement by a sale of the property, so long as they receive all that they were to have in case of a sale, for upon the principle that equity regards and treats as done that which in good conscience ought to be done, the land may be regarded in equity as taking the place of the proceeds if the plaintiff is able and willing to pay the claim of defendants.

13.  The defendants having refused to perform the trust and repudiated it, without reasonable excuse, the plaintiff is entitled to have the property sold and the surplus paid to him after satisfying the claim of defendants, or, at his election, upon his payment of said claim within a time specified in the judgment, to have the lands restored to him.

14.  The allowance of $500 as compensation of a special master commissioner in the case, and the taxation of the same as part of the costs held to have been neither illegal nor excessive.

[Decided December 24, 1908.]            (98 Pac. 590.)
[Rehearing denied March 10, 1909.] ·    (99 Pac. 1128.) .

Error to the District Court, Sheridan County, Hon. David H. Craig, Judge.

Suit in equity to enforce the rights of a grantor of real estate under a contract entered into between the parties contemporaneously with the deed. Judgment was rendered for the plaintiff, and the defendants prosecuted error. The material facts are stated in the opinion.

*Stotts & Blume,* for plaintiffs in error.

It is apparent from the contract that the transaction was not a mortgage. No personal obligation remained, the debt was extinguished. (Samuelson v. Mickey, (Neb.) 103 N. W. 671; 110 N. W. 138; Delaney v. Finnegan, (Minn.) 90 N. W. 387; McMillan v. Bissell, (Mich.) 29 N. W. 737; Blumberg v. Beekman, (Mich.) 80 N. W. 710; Holmes v. Warren, (Cal.) 78 Pac. 954; Fabrique v. Cherokee, etc. Co., (Kan.) 77 Pac. 584; Jones v. Jones, (S. D.) 108 N. W. 23; Lemke v. Lemke, (Neb.) 111 N. W. 138; Slutz v. Desenberg, 28 O. St. 371; Smyth v. Reed, (Utah) 78 Pac. 478; Gassert v. Bogh, 7 Mont. 585; 19 Pac. 281; Morrison v. Jones, (Mont.) 77 Pac. 507; Martin v. Allen, (Kan.) 74 Pac. 249; Reed v. Parker, (Wash.) 74 Pac. 61; Reed v. Bond, (Mich.) 55 N. W. 619; Watson v. Edwards, 105 Cal. 70; 38 Pac. 527; Bigler v. Jack, (Ia.) 87 N. W. 700.)

The transaction does not constitute a trust. The contract

does not obligate any one to sell. The plaintiff retained no interest in the real estate, which is essential to constitute a trust in the land. The only interest, if any, that plaintiff could possibly have retained would be an interest in the proceeds of a sale. The deed delivered is a warranty deed, and the fee cannot be limited in any such way as that contended for by counsel for defendant in error. (Case v. Dwire, (Ia.) 15 N. W. 265; 9 Ency. Law 141.) The principle relied upon by the plaintiff in error has been decided in numerous cases in which similar contracts have been entered into. (Byers v. Locke, (Cal.) 29 Pac. 119; Snyder v. Wolford, (Minn.) 22 N. W. 254; Miller v. Kendig, 55 Ia. 174; Stewart v. Nevins, 50 Cal. 276; Shanahan v. Richardson, (Minn.) 78 N. W. 11; s. c. Id. 671; Davis v. Peterson, (Minn.) 60 N. W. 1007; Kickland v. Menasha, (Wis.) 31 N. W. 471; Smith v. Rainey, (Ariz.) 83 Pac. 463.) In these cases it was held that the agreement was not within the statute of frauds, and to decide that question it was necessary to decide that no interest under the contract was retained by the plaintiff in the real estate. In the following cases wherein it was sought to have certain language construed as creating a trust in relation to real estate the decisions support the contention of the plaintiffs in error: Hossack v. Graham, 55 Pac. 36; Fairbanks & Co. v. Welshans & Co., (Neb.) 75 N. W. 865; Phillips v. Hogue, (Neb.) 88 N. W. 181; *In re.* Donaldson Est., (Ia.) 101 N. W. 870; Malley v. Malley, (Ia.) 96 N. W. 735; M. Co. v. Abbott, (Colo.) 42 Pac. 318; Marshall v. Strange, (Ky.) 9 S. W. 250; McIlhenny v. Biz, (Tex.) 13 S. W. 655; Cook v. Black, 54 Ia. 693; Riddle v. Beattie, (Ia.) 41 N. W. 607; Rider v. Clark, 54 Ia. 242. We contend that a promise to pay another out of the proceeds of certain property not under the control of the promisee does not create a trust in that property.

If the contract amounted to a promise that the plaintiffs in error would pay the defendant in error a part of the proceeds it did not create a lien, and, therefore, not a trust

in or upon the real estate. The grantees under the deed could do with the property what they pleased, since the grantor retained no control over it. In such a case there is no lien and no trust in or upon the property. The judgment is erroneous, therefore, for adjudging that the defendant in error had an interest in the property. (Am. P. Co. v. Wright, 46 Atl. 215; Franklin v. Browning, 117 Fed. 226; Strong v. R. R. Co., 102 Fed. 511; Addison v. Enoch, 62 N. Y. Supp. 613; Hale v. Dressen, (Minn.) 78 N. W. 1045.)

The contract is void for the absence of any obligation. A party suing upon a contract must show a binding agreement between the parties. (9 Cyc. 712-717; Buckmast v. Thompson, 36 N. Y. 557; Clarke v. Koenig, (Neb.) 54 N. W. 842; Kleinschmidt v. Kleinschmidt, (Mont.) 24 Pac. 266; Huntington v. Russell, 8 Pac. 511.) Though courts will construe a contract if possible so as to make it enforceable, a new contract cannot be supplied for the parties, nor can terms and conditions be interpolated to which the parties have not assented. (Westfall v. Albert, 212 Ill. 68; Stanlon v. Miller, 58 N. Y. 192; Gibson v. Minet, 1 H. Bl. 615; Miller v. Kendig, 55 Ia. 174; Allen v. Ross, (Ia.) 110 N. W. 583.) There was no obligation to sell, and the only way in which such an obligation can be found in the contract is by interpolating the same. It does not appear that the plaintiffs in error ever assented to the proposition that they would be obliged to sell. (Darr v. Mummert, 57 Neb. 378; Becknagle v. Schmaltz, (Ia.) 33 N. W. 365; Fisher v. Buchanan, (Neb.) 96 N. W. 339; Story's Eq., Sec. 767.)

The contract is void for uncertainty. There is no time stated for the sale or any provision requiring sale. (Gates v. Gamble, (Mich.) 13 N. W. 631; Mfg. Co. v. Hobbs, (N. C.) 83 Am. St. 661; Alstrom v. Fitzpatrick, (Mont.) 42 Pac. 757; Jenkins v. Clarkson, 7 Ohio 72; Stickler v. Giles, (Wash.) 37 Pac. 293; Faulkner v. Drug Co., (Ia.) 90 N. W. 585; Wilkinson v. Havenrich, (Mich.) 26 N.

W. 139; Davie v. Co., (Mich.) 53 N. W. 325; Ames v. Life Ins. (Minn.) 86 N. W. 344.)

Again, the suit cannot be maintained for the reason that the contingency upon which certain payments were to be made to the plaintiff below has not arisen, no sale having occurred. (Root v. Childs, 68 Minn. 142.) The defendants pleaded the statute of limitations generally, and evidence was produced upon the theory that such pleading was sufficient. It is, therefore, to be treated as having been sufficient. (Boglio v. Georgietta, 20 Colo. App. 338; Nix v. Miller, 26 Colo. 203; Spooner v. Keele, 51 N. Y. 527; Tew v. Powers, 86 Pac. 342.) Where no party is misled amendments are liberally allowed. The defendants below were properly allowed to amend their pleading as to the statute of limitations and the subsequent order striking the amendments from the files was improper.

The action is barred by the statute of limitations. It should have been brought within five years after the execution of the contract. (Ingersoll v. Davis, 82 Pac. 867; Adams v. Holden, (Ia.) 82 N. W. 469.) The right to redeem is reciprocal with the right to foreclose and where the right to foreclose is barred, the right to redeem is also barred. The right to foreclose and to redeem commenced the moment that the contract was made. (Borden v. Clow, 30 Pac. 821.) Some of the cases cited below turned upon the point as to the time that the statute commenced to run; all seem to agree that when possession follows the statute commences to run as soon as that possession is taken. Borden v. Clow, (Nev.) 30 Pac. 821; Allen v. Allen, (Cal.) 27 Pac. 30; Morrow v. Jones, (Neb.) 60 N. W. 369; Murphy v. St. Paul, (Minn.) 65 N. W. 357; Long v. Long, (Mo.) 19 S. W. 537; Miller v. Smith, (Minn.) 46 N. W. 324; Dickenson v. Stewart, (Neb.) 98 N. W. 1085; Rogers v. Benton, (Minn.) 38 N. W. 765; Bradley v. Norris, 65 N. W. 367; Searight v. Palmer, (Ala.) 7 So. 201; Green v. Capps, (Ill.) 31 N. E. 597; Hancock v. Harper, 86 Ill. 445; Emory v. Keihan, 94 Ill. 543;

Locke v. Caldwell, 91 Ill. 417; Cower v. Winchester, 33 Iowa, 303; Cunningham v. Hawkins, 24 Cal. 409; Crawford v. Taylor, 42 Ia. 260; Green v. Turner, 38 Ia. 112; Smith v. Foster, 44 Ia. 442; Holton v. Meighen, 15 Minn. 69; King v. Meighen, 20 Minn. 264; Parson v. Noggle, 23 Minn. 328; Fisk v. Stewart, 26 Minn. 365; 4 N. W. 611; Bird v. Keller, 77 Me. 270; Green v. Cross, 45 N. H. 584; Kaufman v. Sayre, 2 B. Mon. 202; Haskell v. Bailey, 22 Conn. 569; Jackson v. Lynch, 129 Ill. 72; 21 N. E. 580; Krutz v. Gardner, (Wash.) 65 Pac. 771; Stevens v. Dedham, 129 Mass. 547; Montgomery v. Chadwick, 7 Ia. 113; Rogers v. Benton, (Minn.) 38 N. W. 765; Bradley v. Norris, 65 N. W. 357, and see cases cited *supra.*

Nothing has intervened in this case to interrupt the statute. The witness Helvey had a conversation with one of the plaintiffs in error, but the latter in no manner recognized the rights of Thurmond. In any event the plaintiffs in error being tenants in common the admission being made by one only would not bind either one. (Jones on Mortgages, 5th Ed., Sec. 1171.)

The action to foreclose is not an action to recover real property, and neither is an action to redeem. (Ingersoll v. Davis, 82 Pac. 867; Krutz v. Gardner, (Wash.) 65 Pac. 771; McKesson v. Haley, (Neb.) 35 N. W. 883.) There is no conflict in the evidence as to value. The property was worth more than the amount of the claim of plaintiffs in error as early as 1900. Therefore, the defendant in error could have brought the action at that time, if he had a cause of action, and the situation has not changed except that the value has risen higher. But he delayed too long. The statute of limitations is favorably construed. No time for payment being fixed, the statute begins to run from the time of the contract. (Borden v. Clow, (Nev.) 30 Pac. 821; Howard v. Church, (Mich.) 16 N. W. 307; Owen v. Henderson, 7 Ala. 641; Clay v. McKeen, 69 N. H. 86; Erwin v. Brooks, 111 N. C. 358; Caldwell v.

Rodman, 50 N. C. 139; Little v. Dunlap, 44 N. C. 40; Teasly v. Bradley, 110 Ga. 497.) A party cannot gain by his own negligence, and postpone the running of the statute. (Ganser v. Ganser, (Minn.) 86 N. W. 18; Wood Lim. 37; Bissell v. Forbes, (Cal.) 82 Pac. 698; Lewis v. Penderdrast, (Minn.) 39 N. W. 802; 19 Ency. L., 2nd Ed., 211; 18 Id. 116; Atchison v. Burlingame, (Kan.) 14 Pac. 271; Culp v. Culp, (Kan.) 32 Pac. 1118; Bauserman v. Charlotte, (Kan.) 26 Pac. 1051; Bauserman v. Blunt, 13 Sup. Ct. 466; Granger v. Granger, 6 O. 35; Hintrager v. Trout, 69 Ia. 746.)

A demand by Thurmond upon the defendants below would seem to be necessary to give him a cause of action. (Sheets v. Andrews, 2 Blackf. 277; *In re* Allen's Est. 88 N. W. 1091; 9 Ency. L. 204; 1 Cyc. 438.) No demand was made before January 26, 1906. This was too late. Demand must have been made before the action became barred. (Thomas v. Beach Co., (Cal.) 46 Pac. 699; Sheaf v. Dodge, 68 N. E. 292; 161 Ind. 270; Meherin v. Produce Ex., (Cal.) 48 Pac. 1074; Atchison v. Burlingame, (Kan.) 14 Pac. 271; Culp v. Culp, 32 Pac. 1118; Clements v. Lee, 8 Tex. 374; Thompson v. Iron Co., (W. Va.) 23 S. E. 775; Catlin v. Green, 120 N. Y. 441; State v. Morton, (Minn.) 61 N. W. 458; Litchfield v. McDonald, (Minn.) 28 N. W. 191; Kraft v. Thomas, (Ind.) 18 Am. St. 345; Landis v. Saxton, 24 Id. 403.) Whatever the right of the plaintiff below, defendant in error here, it was abandoned in 1903 when he failed to carry out the agreement made between his agent, Helvey, and John C. Weltner for a settlement. (Walker v. Ray, 111 Ill 315; Patrick v. Chenault, 6 B. Mon. 315; Life Ins. Co. v. Cole, 4 Fla. 359; Hough v. Coughlan, 41 Ill. 130; Farrow v. Farrow, 6 B. Mon. 482; Neidlinger v. Benheimer, 11 N. Y. Supp. 609; Smith v. Washington, 88 Mo. 471; Van Wagner v. Royce, 21 N. Y. Supp. 191; North v. Platte Co., (Neb.) 45 N. W. 693; Bacon v. Chase, (Ia.) 50 N. W. 23; Sedlack v. Sedlack, 13 Pac. 452; Bangs v. Stephen-

son, (Mich.) 30 N. W. 317.) Moreover, his right was lost by his unreasonable delay in bringing the action. (Allen v. Allen, (Mich.) 10 N. W. 113; Loomis v. Rosenthal, (Or.) 57 Pac. 55; Melms v. Brew. Co., (Wis.) 66 N. W. 518; Mining Co. v. Woodman, (Colo.) 23 Pac. 908; Howard v. Elliott Nat. Bank, 96 U. S. 61; Cox v. Montgomery, 36 Ill. 396; Irish v. College, 126 Ill. 74; Campbell v. Hicks, 19 O. St. 433; Sagadhoc v. Ewing, 65 Fed. 702; Abraham v. Ordway, 158 U. S. 416; Connelly v. Rue, 148 Ill. 207; Sackman v. Campbell, (Wash.) 45 Pac. 895; Wetzell v. R. Co., 18 Sup. Ct. 307; Godwin v. Whitehead, 88 Va. 600; Reel v. Ewing, 71 Mo. 17; Bobb v. Wolff, 148 Mo. 335; 49 S. W. 996; Bank v. R. R. Co., 125 Mass. 490; Miller v. Shaw, 103 Ill. 277; Gilmer v. Morris, 80 Ala. 78; Oil Co. v. Newbury, 91 U. S. 587; Johnston v. Min. Co., 13 Sup. Ct. 587; R. R. Co. v. Fitler, 60 Pa. St. 124; Catlin v. Green, 120 N. Y. 441; Hilliard v. Alleghany Co., 173 Pa. St. 1; 18 Ency. Law 102.)

It seems to us that the only reason for the long delay in bringing the action was the plaintiff's intention to enforce his right only in case he should find it to his advantage. Such action should not be permitted. Had the suit been brought long before it was defendants would have had their money and could have invested it at a much higher rate of interest.

The court erred respecting the amount found due to the plaintiffs in error and in computing interest only at the rate of 8 per cent per annum. It is unreasonable to suppose that the parties intended the rate of interest to be reduced to the rate which is permitted by law in the absence of contract, and the only possible construction of the contract is that the same rate which was provided in the notes should be paid thereafter.

The contract was without consideration and especially so far as the rate of interest is concerned if reduced below the former contract rate. The right of possession existed in the plaintiffs in error, at least after default, under their

mortgages. (20 Ency. Law, 2nd Ed. 900; Everett v. Buchanan, (Dak.) 8 N. W. 11; Rev. Stat. 1899, Sec. 2728.) In those states where a mortgage is considered as a lien only the statute has abrogated the common law by so declaring. (Allen v. Allen, (Cal.) 27 Pac. 30; Taylor v. McClain, 2 Pac. 399; Pueblo v. Beshoar, 5 Pac. 639; Snyder v. Parker, 53 Pac. 59; Dawson v. Peter, 77 N. W. 997.) At common law the legal title is vested in the mortgagee, and the statute above cited makes a mortgage a conveyance. Again, under the mortgages the plaintiffs in error had the power to sell. Thus the right of possession and of sale was already possessed by them and the contract sued on gave them nothing more. There was, therefore, no consideration for the contract.

The allowance of compensation to the special master commissioner was excessive and illegal. His compensation should have been fixed under Section 4541, Revised Statutes, 1899; (15 Ency. Law, 2nd. Ed. 964; Schnadt v. Davis, (Ill.) 57 N. E. 652; Roby v. T. & T., 62 Ill. 544; 16 Cyc. 432; Bank v. Tamajo, 77 N. Y. 475; In re Holdrom, (Mont.) 25 Pac. 438; Middleton v. Bankers Co., 32 Fed. 534; Engine Co., (Ill.) 79 N. E. 939.) This court should reduce the compensation of the commissioner to a reasonable amount.

*Lonabaugh & Wenzell*, for defendant in error.

The plaintiff below, defendant in error here, is entitled to recover upon either of two theories: First, the transaction constituted a mortgage, and, second, a trust relation was created between the parties, and it became the duty of the defendants below, plaintiffs in error here, to sell the premises at such time as would be mutually beneficial to the parties, and apply the proceeds in the manner required by the contract. Until two days prior to the commencement of the suit nothing was ever done by the plaintiffs in error that could possibly be construed into a repudiation of the trust.

If the conveyance was absolute, then why was the contract made? If it was no part of the intention of the Weltners to perform the contract, then they practiced a fraud upon Thurmond for the purpose of securing title to his property. The testimony of both of the Weltners shows clearly that they did not consider that they received an absolute title. The statute of limitations was not properly pleaded as the original pleading was a statement of a legal conclusion only and the attempted amendment was made without notice and was subsequently stricken from the files. (Phillips on Code Pl., Sec. 338; 1 Kinkead's Code Pl., Sec. 166; 2 Id. p. 1092; 2 Bates' Code Pl. 884-885; 13 Ency. Pl. & Pr. 212-215; Canfield v. Sanders, 17 Cal. 569; Ry. Co. v. Center Tp., 130 Ind. 89; Scrogan v. Lbr. Co., 59 N. W. 548.)

The reason of the long delay in bringing this case was the intentional delay of the Weltners in not selling the property. They cannot take advantage of their own wrong. (Breen v. Mann, 151 Fed. 145.) There is no ground for the claim of laches. The plaintiffs in error were only entitled to 8 per cent under the contract, the legal rate fixed by law in the absence of contract. That it was understood by the Weltners themselves that the previous contract rate was not continued is shown by their testimony.

The two instruments, the deed and contract, must be construed together as they form but one transaction. The contract unquestionably requires a sale of the property. Any other construction would enable the Weltners to secure the property of Thurmond for the amount of the original indebtedness. This clearly would be inequitable and in opposition to the contemplation of the parties as shown by their testimony. In this state a mortgage is a mere lien and creates no estate in the land. So a deed absolute in form which is given as security only, conveys no title but is simply a mortgage. Under this rule the deed and contract in question constituted a mortgage only. (Balch v. Arnold, 9 Wyo. 37; Ingersoll v. Davis, 14 Wyo.

120; Brinkerhoff v. Jones, 44 Wis. 498; McCauley v. Smith, 30 N. E. 997; Flynn v. Holmes, 108 N. W. 685; Vallerly v. First Nat. Bank, 106 N. W. 127; DeLeonis v. Hannell, 82 Pac. 349; Bank v. Cerf, 81 Pac. 1077 (Cal.) ; Nicklin v. Betts Co., (Ore.) 5. Pac. 51; Ins. Co. v. Clark, 42 N. E. 248 (O.) ; Dobbs v. Kellogg, 10 N. W. 623 (Wis.) ; King v. Creaves, 51 Mo. App. 534; O'Neil v. Murray, 50 N. W. 620, (Dak.) ; Meyer v. Elev. Co., 80 N. W. 189 (S. D.) ; Bryant v. Ins. Co., (Mass.) 14 N. E. 454; Lewis v. Lewis, 85 Fed. 896; Garwood v. Wheaton, 128 Cal. 399; Townsend v. Peterson, 12 Colo. 491; Everett v. Buchanan, 2 Dak. 249; Jordan v. Sayre, 23 Fla. 1; Williamson v. Ins. Co., 100 Ga. 791; Kelly v. Leachman, 2 Ida. 1112; Landers v. Beck, 92 Ind. 49; Seckler v. Delfs, 25 Kan. 159; Howe v. Austin, 40 La. 223; Dawson v. Peter, 119 Mich. 274; Rice v. Ry. Co., 24 Minn. 464; Holland v. Silver Bow Co., 15 Mont. 460; Orr v. Ulatt, 23 Nev. 134; O'Dell v. Montrose, 68 N. Y. 499; Balduff v. Griswold, 9 Okl. 438; Security &c. v. Lowensburg, 62 Pac. 647 (Or.) ; Guana Co. v. Richardson, 26 S. C. 401; Assn. v. Dowling, 74 N. W. 438 (S. D.) ; Ins. Co. v. Clarke, 79 Tex. 23; Thompson v. Cheseman, 15 Utah 43; Snyder v. Parker, 19 Wash. 276; McCormick v. Henderson, 86 Wis. 499.) It is not essential in determining whether or not a given transaction is a conveyance absolute, or is intended as security only, that there should be a promise by the mortgagor or grantor to pay the debt. (Garwood v. Wheaton, 128 Cal. 399; Brown v. Casaden, 43 Ia. 103; Campbell v. Denborn, 12 Am. 671; Nigler v. Martin, 34 Minn. 117; Glover v. Payne, 19 Wend. 518 (N. Y.) ; Madigan v. Mead, 16 N. W. 539 (Minn.) ; Fish v. Stewart, 24 Minn. 105; Mathews v. Sheehan, 69 N. W. 585; Sowles v. Wilcox, 86 N. W. 689 (Mich.) ; McCauley v. Smith, 30 N. E. 997 (N. Y.) ; Russell v. Southard, 19 U. S. 67.)

The rule enforced in some states, that the rights of mortgagor and mortgagee are reciprocal and that when the right to foreclose is barred by the statute, the right to redeem

is also barred, was first announced when the mortgagee acquired the legal title to the property subject only to its being defeated by the payment of the debt. Such a rule cannot be adopted in this state. First, the statute, (Sec. 3451) provides that an action for the recovery of the title or possession of lands may be brought within ten years after the cause of action accrues. The present action is one for the recovery of title to lands and comes squarely within the above statute. Again, the possession of the Weltners was never adverse to Thurmond until they repudiated the agreement and refused to account in January, 1906. (Spect v. Spect, (Cal.) 26 Pac. 203; Raynor v. Drew, 13 Pac. 866; Bradley v. Norris, 65 N. W. 657; Bachus v. Birks, 65 N. W. 459; Hall v. Harper, 65 N. W. 33; Stall v. Jones, 66 N. W. 653; Couple v. Sydney, 50 N. Y. 468; Krutz v. Gardner, 65 Pac. 771; Wilson v. Richards, 1 Neb. 342; Robinson v. Fife, 3 O. St. 551; Waldo v. Rice, 14 Wis. 286; Keithley v. Wood, 151 Ill. 566.) The statute of limitations has no bearing here. (Krutz v. Gardner, 65 Pac. 771; Culley v. Buorey, 79 Pac. 705; Henthorn v. Sec. Co., 79 Pac. 653; Kelso v. Norton, 70 Pac. 896; Stouffer v. Harlan, 74 Pac. 610.) Counsel for plaintiffs in error do not refer to the matter of reforming the contract so as to limit the provision for a sale of the property, to two or three years, and, therefore, may be presumed to have abandoned that claim. Reformation would have to be denied under the decision in the case of Grieve v. Grieve, 89 Pac. 569. The stronger view to be taken of the case is perhaps that the deed and conversation as shown by the deed and contract created a trust so that the Weltners became trustees of an express trust. The statute does not begin to run against the right to enforce such a trust until repudiation and notice thereof. (Babcock v. Wyman, 19 How. (U. S.) 269; Brown v. Bookstaver, 31 N. E. 17; Quinn v. Kellogg, 35 Pac. 49; Keaton v. Greenwood, 8 Ga. 97; Hancock v. Harper, 86 Ill. 445; Ward v. Harvey, 12 N. E. 399 (Ind.); Thomas v. Merry, 15 N. E. 244; Currie

v. Studley, 33 N. E. 709 (Mass.) ; Pearson v. McCurty, 100 N. Y. 608; Jaynes v. Throckmorton, 57 Cal. 368; Potter v. Kimball, 71 N. E. 308 (Mass).; Felkner· v. Dooley, 78 Pac. 365; White v. Costigan, 72 Pac. 178; Lewis v. Topfer, 96 N. W. 905; Cromwell v. Norton, 79 N. E. 433; Ryder v. Loomis, 36 N. E. 836; Robertson v. Warren, 100 S. W. 805.)

All the conditions necessary to the creation of an express trust are presented in this case and it is clear that the sole object intended to be accomplished was a sale of the property in such a way and at such a time as to benefit Thurmond if possible, so that he should receive all the surplus proceeds over and above the claim of the Weltners. (Urann v. Coates, 109 Mass. 581; Cooper v. Whitney, 3 Hill 95.) The court should consider all the surrounding circumstances and give such a construction to the contract as will make it valid and enforceable according to the intention of the parties, rather than a construction which would render it void or inoperative. (Sheldon's Est., 97 N. W. 524; Ryan v. Hamilton, 68 N. E. 781; Nutt v. Nutt, 35 So. 686; Tel. Co. v. T. Co., 125 Fed. 342; White v. Sayers, 101 Va. 621; Barr v. Cardiff, 75 S. W. 341; Haefelin v. McDonald, 89 N. W. 395; Clark v. Eureka Co., 123 Fed. 922; Leis v. Sinclair, 67 Kan. 748; Reedy Co. v. Kertz, 80 S. W. 684; Bancroft v. Union Co., 57 Atl. 97; Braner v. Oceanic Co., 7 N. E. 863; Lumber Co. v. Coal Co., 43 N. E. 774.)

It is uniformly held that the statute of limitations affects only suits in court, and that powers of sale by advertisement are not affected by such statutes. (Foot v. Burr, 92 Pac. 236; Brereton v. Benedict, 92 Pac. 239.) Where property is conveyed to a creditor with authority to sell and apply the proceeds on the debt limitations do not begin to run until sale. (Robertson v. Warren, (Tex.) 100 S. W. 805.)

The allowance to the special master commissioner was not unreasonable or illegal.

POTTER, CHIEF JUSTICE.

In 1893 John D. Thurmond, was the owner of certain lands in the County of Sheridan, in this state, and mortgaged the same to John C. Weltner and Frederick H. Weltner to secure his promissory note to them for $2,500, bearing interest at 18 per cent per annum. In 1895 he executed a second mortgage upon the premises to John C. Weltner to secure a note for $500, bearing the same rate of interest. On January 13, 1897, the indebtedness being past due, and a balance remaining unpaid, Thurmond executed and delivered a warranty deed conveying the premises to John C. Weltner and Frederick H. Weltner, for the stated consideration of $4,000, and on the same date and as a part of the transaction the parties made and signed the following contract in writing:

"This agreement made this 13th day of January, 1897, between John C. Weltner and Frederick H. Weltner of Sheridan County, Wyoming, parties of the first part, and John D. Thurmond of Sheridan County, Wyoming, party of the second part.

"Witnesseth: That in consideration of a warranty deed, bearing even date herewith and executed by said second party to said first parties, upon lots 5, 6, 7 and 8 in block sixteen, original town of Sheridan, Wyo., and lots B, C, E, G and H, Thurmond 3rd Addition to the town of Sheridan, Wyoming, and N ½ NE ¼ and N ½ NW ¼, Sec. 24, Tp. 56 N., R. 83 W, and W ½ NE ¼ and E ½ NW ¼, Sec. 13, Tp. 56 N., R. 83 W., all in Sheridan County, Wyoming, and in payment of two certain mortgages upon said above described premises given to said first parties by said second party, the amount now being due and owing to said first parties from said second party being about $4,000.00.

"It is hereby agreed by and between the parties hereto, that in case said property sells for more than enough to pay off the claim of said first parties, including principal, interest, insurance, taxes and all other legitimate and legal expenses, then all sums of money over and above all of

first parties just and lawful claim is to be paid to said second party.   Witness our hands this 13th day of January, 1897.

(Signed)                    J. C. WELTNER.
(Signed)                    F. H. WELTNER.
(Signed)                    JOHN D. THURMOND."

Signed in the presence of J. F. Hoop.

This suit was commenced January 29, 1906, and was brought by Thurmond against John C. and Frederick H. Weltner to redeem or have the property sold and the proceeds applied according to the agreement.   The deed is alleged to have been executed and delivered in consideration of the aforesaid agreement, and in payment of the mortgage indebtedness, also as security for the payment of a claim of the defendants against the premises in the sum of $4,000, and in trust for plaintiff's use and benefit, to sell the property and apply the proceeds as stated in the contract.   A demand for an accounting under the contract is admitted by the pleadings to have been made and refused on January 27, 1906, and plaintiff alleges that the defendants then for the first time repudiated the trust and advised plaintiff that they would not be bound by the contract.

The answer denies that the deed was executed as security or in trust as alleged in the petition, but admits that it was executed in payment of the mortgage indebtedness, and denies that there was any consideration for an obligation on the part of defendants to sell the property, if such an obligation was imposed upon them by the contract.   The agreement for the payment to plaintiff of the proceeds of sale in excess of the claim of defendants is alleged to have been limited to "not to exceed three years," and that a sale during that period could not have been made for an amount equal to the claim of defendants, and a reformation of the contract is prayed for in accordance with such agreement. Other defenses are set out in the answer which will be stated when we come to their consideration.   The cause was referred to a special master commissioner to take the evidence and report the same with his conclusions of fact and law.

Upon the evidence and stipulations as to the facts, the master reported in substance as his conclusions of fact that the deed and written contract were executed pursuant to an agreement between the parties that if the plaintiff would convey the mortgaged premises to the defendants, the latter would enter into a written agreement giving the plaintiff further time to pay the sum of $4,000, the amount of the debt then secured by the mortgages, together with interest, insurance, taxes and all other legitimate and legal expenses, and to redeem the property, without any rate of interest being mentioned; that defendants would sell the property, and if the same should sell for more than enough to pay said sum of $4,000, with interest, insurance, taxes and all other legitimate and legal expenses, then the excess should be paid by defendants to the plaintiff. That no definite time was fixed either before or at the time of the execution of the deed and written contract for the payment of the claim of defendants with interest and other lawful charges, and the redemption of the property by plaintiff, or for the sale of the property by defendants. That the stipulated net amount of the rents and profits, viz.: $250, together with the sum of $1,000, received by defendants upon the sale of certain of the town lots should be credited against their claim, as of date July 22, 1901. That after allowing such credit there remained due and owing to defendants the sum of $5,549.36. That defendants still held title to the property, except certain lots sold as aforesaid, and that the value of the same is $36,000. That at the time of the commencement of this action and for a long time prior thereto the property could have been sold by defendants for a sum greatly in excess of their claim, including interest, insurance, taxes and all other expenses referred to in the written agreement. That the demand of plaintiff on January 27, 1906, for an accounting was refused by defendants, who then for the first time repudiated their said agreement, but before that time had ever recognized and acknowledged the plaintiff's rights under the agreement and

his right to redeem upon payment of the lawful claims of defendants against the property. That plaintiff is ready, willing and able to pay the amount found due the defendants; and that the defendants did not at any time expend any money in the care and repair of the premises or for improvements thereon.

As conclusions of law the master found that the defendants are not entitled to a reformation of the written contract; that the deed was conditional and not absolute; that the plaintiff retained an interest in the property and a right to redeem upon the payment of the just claims of defendants against the property; that the defendants were charged with the legal duty to sell the premises, or portions from time to time, in such manner as they could do profitably, and out of the proceeds to first satisfy their own lawful claims, as provided in the agreement, and pay the balance, if any, to the plaintiff. That the defendants have a lien against the property in controversy for the amount found due them, and that plaintiff is entitled to redeem the property upon payment of said amount with legal interest from the date of the master's findings. That upon plaintiff's failure to pay said amount with interest and so redeem the property, the same should be sold as upon execution and the proceeds be applied first to the satisfaction of the costs of sale and the amount found due the defendants with interest as aforesaid, and the surplus paid to the plaintiff.

Exceptions were filed by the defendants to the master's report and his conclusions of fact and law, and upon the hearing thereof and of a motion of plaintiff to confirm the report and findings, the latter motion was sustained and the report and findings approved and confirmed in all respects, and the exceptions were overruled, to which the defendants excepted. Thereupon, following the conclusion and recommendation of the master commissioner, a judgment was entered to the effect that the sum found to be due the defendants be adjudged a lien upon the property still in controversy, being that to which the defendants retained title;

that upon the payment by plaintiff of said sum with interest from September 14, 1907, to the day of payment, within thirty days after the date of the judgment the plaintiff be permitted to redeem the property; that upon such payment the defendants execute and deliver to plaintiff a deed conveying the property free and clear from incumbrance; that if such deed be not executed the judgment to stand as and for a conveyance, and the defendants, their heirs and assigns be thereafter enjoined from claiming or setting up any right, title or interest in the property adverse to the plaintiff, his heirs or assigns; that a writ of restitution be awarded upon the execution of such deed by defendants, or their failure to execute the same, to place the plaintiff in possession; that if the plaintiff should fail to pay the amount found due the defendants within the time specified, then upon a precipe filed by either party an order of sale be issued to the sheriff directing him to sell the property as upon execution, and out of the proceeds to satisfy first the amount due the defendants with interest as aforesaid, and the costs of sale, and pay the balance to the plaintiff; and that plaintiff have and recover the costs of the action. The defendants complain of the judgment on error.

It appears that upon the execution of the deed and contract aforesaid the mortgages were released on the record, and the notes and contract were left with Mr. Hoop, the attorney who drew the deed and contract, and they remained in his hands until the taking of the evidence in this case. The purpose for which he was to hold the notes is not clearly shown, for nothing seems to have been said about it at the time. J. C. Weltner, one of the defendants, on his direct examination as a witness testified that he left the notes with Mr. Hoop for Mr. Thurmond. On cross-examination he said that it was by agreement with Mr. Thurmond. F. H. Weltner, the other defendant, was asked whether Hoop was to hold the papers as trustee for both parties, and his answer was that "they were left with him. I don't know as there was anything said as to what he

should be." On being further questioned he admitted that Hoop represented all the parties and had kept the papers in his possession from the time they were left with him. When the notes were offered in evidence they were produced by John C. Weltner, who said that he got them from Mr. Hoop.

The defendants went into possession of the property described in the deed immediately upon its execution and the execution of the contract, and have continued in possession and to hold the title, except as to lots 5, 6, 7 and 8 in block 16 in the town of Sheridan, which were sold by them for $1,000, on July 22, 1901.

There is no dispute concerning the value of the property at the time of the trial as found by the special master, and the finding that the property remaining unsold was worth $36,000 is clearly supported by the evidence. There is some conflict respecting the value at the time the deed and contract were executed. It is admitted by all the witnesses that there was then very little demand for such property, and the defendants testified that it could not have been sold for enough to pay the amount of their claim. One witness, however, testified that the property was then worth $5,000, and another that it was worth $8,000. In 1899 or 1900, if not before, the value of the property commenced to increase. From at least as early as 1900 there was a gradual increase each year, and the witnesses who place the value of the property still in controversy in 1906 and 1907 at from $36,-000 to $40,000, testified that in 1900 the value was 50 per cent less. The gradual increase in value is illustrated by the testimony of one of the witnesses that in 1902 the property was worth $20,000, in 1903, $25,000, in 1904, $28,-000, in 1905, $30,000, and in 1906 and 1907, $36,000. The other testimony is in substantial accord with this. Although there was a demand for such property for several years before the commencement of this suit the defendants made no effort to sell it, but whenever approached on the subject of selling a part of it by those wishing to purchase

the defendants refused to consider the matter, declaring as their reason when testifying that they had not desired to sell a part, believing that to do so would injure the sale of the remainder.

During the taking of the evidence it was stipulated that if the defendants should be held accountable for rents and profits the sum of $250 might be allowed for the use of the farm lands as of July 22, 1901, and that the other rents and profits equaled the expenses of taxes, insurance, repairs and other charges in caring for the property; but the defendants reserved the right to object to any evidence of rents and profits as incompetent, irrelevant and immaterial.

We do not understand it to be contended that the evidence is sufficient to authorize a reformation of the contract on the ground of mistake in its failing to limit the time for the continuance of the provision entitling the plaintiff to the proceeds of sale in excess of the claim of defendants. The evidence is not clear, satisfactory and convincing of a mistake in that respect. The plaintiff testified that a limitation as to time was not mentioned or discussed by the parties, but that the terms of the contract expressed their actual agreement, and before being signed was read over to all of them and was satisfactory. Each of the defendants testified that in the conversation preceding the preparation and signing of the deed and contract they proposed to the plaintiff that if he would deed the property to them they would give him one or two years' further time in which to redeem the property, or, as they also state it, for them to go ahead and sell the property so that he, the plaintiff, would have eighteen months longer time to redeem beyond the six months allowed by law in case of a foreclosure. J. C. Weltner states the conversation or proposal as follows: "I told him that if he would turn me the property, saving the expense of foreclosure, I would give him advantage of it in this way. I would give him a year or two longer for him to sell the property if he would turn the property over to me, make a deed to me of the property, which he

(10)

agreed to do. I told him I would try to sell that property within a year or two, and after I sold it if there was anything over and above what he owed me I was to turn it over to him. And we drew up a contract to that effect." The testimony of F. H. Weltner is substantially the same.

Neither of the defendants testify or claim that the alleged omission or mistake was the result of any misrepresentation or deceitful practice on the part of any one, but they say that it was an oversight on the part of Mr. Hoop, who drew the contract. Although Mr. Hoop was a witness on behalf of the defendants he was not questioned in relation to this matter, and the testimony of the defendants themselves is not convincing that they limited the time in stating the terms of the agreement to Mr. Hoop for his information in writing the contract. According to their testimony a definite time would not seem to have been agreed upon prior to the signing of the contract, for they repeatedly speak of the time proposed by them as "one or two years," one of them saying that one or two years after the date of the deed was intended, and the other, that length of time beyond the usual redemption period. J. C. Weltner says that they did not agree whether the plaintiff was to have one or two years, and when asked on cross-examination how Hoop was to determine whether to mention the time in the contract as one or two years, he answered: "He could write it that way, one or two years." Each defendant testified that he did not read the contract before signing it, giving as the only excuse therefor that it was not his custom to read a paper drawn for him by an attorney. But each testified that it may have been read to him, though he had no recollection of it. It does not appear that Mr. Hoop had previously represented Mr. Thurmond in any matter, but it does appear that he had been employed in other matters by the defendants, and the indication is that he was selected by the latter for the purpose of putting this agreement into proper shape for signing. The inference is strong, therefore, that if a time limit was mentioned

in any previous conversation, it was abandoned or not insisted upon when finally expressing the agreement in writing.

But if it be a fact that defendants did not read the contract or have it read to them that would not put them in a position to complain of the alleged mistake, for the mistake would then be the result of their own inattention and negligence, without having been misled in any way as to the contents of the contract. (Grieve v. Grieve, 15 Wyo. 358.) Moreover, there is evidence of their subsequent conduct and admissions inconsistent with the theory of a mistake in the contract. Two witnesses testify that at or about the time of the trial one of the defendants stated as his reason for not having sold the property that they could not give a good title to it; and another witness testified that as agent of the plaintiff he interviewed the defendants some time in 1903 for the purpose of a settlement, and that the defendants then proposed to accept from the plaintiff the principal sum of $4,000 with interest at 12 per cent per annum, compounded semi-annually, they to account for the sale price of the town lots previously sold and for the rents collected, and to be reimbursed for taxes, insurance, and repairs; upon the basis of which proposal the defendants would have received about the sum of $10,000. The witness testified that the defendants then said nothing about there having been a limit upon the time for a redemption or sale of the property.

The rights and remedy of the plaintiff below, defendant in error here, if any, depend upon the construction to be given to the deed and contract. It is maintained on his behalf, first, that the deed in connection with the contract constitutes a mortgage giving the grantor a right to redeem upon payment of the debt secured; and, second, that if not a mortgage it amounts to a conveyance to the grantees named in the deed in trust to sell the property and apply the proceeds in the manner stated in the contract.

On behalf of the defendants below, plaintiffs in error here, it is contended that the transaction is neither a mortgage nor a trust, but that the provision for the payment of a part of the proceeds of the sale of the property to the plaintiff is a mere promise or personal contract if anything on the part of the defendants which did not create a lien or a trust in or upon the real estate described. It is insisted that the contract contains no obligation upon the defendants to sell the property; that it is void for uncertainty; that the only contingency upon which the money is to be paid to the plaintiff, viz.: the sale of the property, has not arisen and that, therefore, the plaintiff has no present cause of action; that the cause of action if any is barred by the statute of limitations, and by the plaintiff's laches; that upon a theory of either a trust or mortgage the amount due the defendants is much more than the amount found to be due by the master commissioner and approved by the court.

We are not convinced that the transaction is to be regarded as a mortgage. The difficulty in construing it to be such arises from the inconclusiveness of the evidence respecting the continuance of the debt as a personal obligation of the grantor. The contract recites that the deed was received in payment of the mortgages; the latter appear to have been released upon the record as "paid in full, satisfied and discharged"; and we fail to find anything in the evidence showing that either of the parties subsequent to the transaction in question treated the debt previously due as a continuing obligation of the plaintiff. The defendants were given immediate possession of the property conveyed, and although the notes formerly representing the indebtedness were not returned into the hands of the debtor, they were left together with the contract in the custody of the attorney who drew the papers, and do not seem to have been called for by the defendants until obtained for the purpose of introducing them in evidence in this case. On the occasion in 1903 when an agent of the plaintiff interviewed

the defendants with reference to a settlement of the matter, the defendants proposed to accept the principal sum of $4,-000, named in the contract, with interest at 12 per cent per annum, thus ignoring the rate of interest provided in the notes. In view of the improbability that the defendants would have voluntarily proposed to release their mortgages to accept another conveyance of the same character without any provision as to rate of interest, the evidence relied upon to show that such was their intention is, to say the least, unsatisfactory. The evidence discloses that the debt was past due, that the plaintiff was unable to pay it, that there was practically no demand for the property at the time, and at a forced sale it seems probable that it would have realized no more than the amount of the incumbrance. That the property might later rise in value was evidently within the contemplation of the parties, as well as that the plaintiff should have the benefit thereof, and hence it is reasonable to suppose that the defendants were willing to cancel the debt with the understanding that in case the property could at some future time be sold for an amount greater than the amount they had advanced, with interest, taxes and other expenses, they would pay such excess to the plaintiff, and otherwise they would take the property for the debt.

Although it is held that the absence of a covenant to repay the money in a transaction of this nature is not conclusive evidence of the non-existence of a debt, and that a conditional sale rather than a mortgage was intended, the same authorities hold that fact to be entitled to considerable weight as tending to show that a mortgage was not intended. And it is well settled that a conveyance cannot be a mortgage unless given to secure the payment of a debt; a debt either pre-existing or created at the time, or contracted to be created, is an essential requisite to a mortgage. (1 Jones on Mortgages, (6th Ed.) Secs. 265, 272.) It is true that the defendants when relating the proposal made by them prior to the execution of the deed and contract say that the plaintiff was to be given one or two years to

redeem the property, but that does seem to us sufficient in itself to show an intention that the deed was to operate only as security for the debt, and hence, as a mortgage. The word "redeem" may have been used by them in the sense of a repurchase rather than a redemption of the property as from an incumbrance. Indeed, they refer to the conveyance of the property to them as a foreclosure, and it would seem that they regarded it as such in effect, subject, however, to the agreement as to the proceeds of sale. Again their statement that further time was to be given the plaintiff to redeem is coupled with the explanation that they were to sell the property and pay the plaintiff any surplus over and above the indebtedness.

We are not inclined, therefore, to regard the transaction of the deed and contract as a mortgage. But though the deed conveyed the fee it was not unconditional. The purpose of the conveyance of the fee is stated in the contract made and entered into at the same time as the deed and as a part of the transaction. The agreement of the defendants set forth in the contract is, therefore, something more than a simple promise on their part. They assumed thereby certain duties in relation to the property for the benefit of the plaintiff as well as themselves as the condition upon which the property was conveyed to them, and thus they became trustees holding the title for the purpose stated in the contract.

A trust in its technical sense is defined as "an obligation upon a person arising out of a confidence reposed in him to apply property faithfully, and according to such confidence." (1 Perry on Trusts, Sec. 2.) "An obligation arising out of a confidence reposed in one who has the legal title to property conveyed to him, that he will faithfully apply and deal with such property according to the confidence reposed." (28 Am. & Eng. Ency. L., 2nd Ed. 858.) Not only do the defendants concede in their testimony that they understood they were to sell the property, but the contract is to be construed as imposing that duty

upon them. The language employed, "if the property sells for more" indicates that a sale was contemplated by the parties. Unless a sale was intended the agreement to pay a surplus of the proceeds to the grantor would have little meaning, and the defendants would be vested with absolute discretion to render their agreement effective or the contrary. They undoubtedly had some discretion as to the time of sale but only such as would enable them to deal with the property prudently and reasonably in carrying out the evident purpose of the conveyance. We are satisfied that the contract created an express trust, and that the defendants received the deed upon that consideration. This conclusion is well sustained by numerous cases where similar transactions and contracts have been construed. (Cooper v. Whiting, 3 Hill, 95; Freer v. Lake, 115 Ill. 662; Diefendorf v. Spraker, 10 N. Y. (6 Seld.) 246; Johnson v. Johnson, 40 Md. 189; Urann v. Coates, 109 Mass. 581; Sawyer v. Cook, 188 Mass. 163; McGinness v. Barton, 71 Ia. 644; Harris v. Clark, 94 Ia. 327; Byers v. McEniry, 117 Ia. 499; Pratt v. Thornton, 28 Me. 355; Cadman v. Peter, 118 U. S. 73; Arms v. Ashley, 4 Pick. 70; Potter v. Langstrath, 151 Pa. St. 216; Ogden v. Grant, 6 Dana (Ky.) 473; Given v. Sands, 216 Pa. St. 463; Maxwell v. Barringer, 110 N. C. 76; Cook v. Bell, 114 Mich. 283; Nesbitt v. Stevens, 161 Ind. 519; Eaton v. Barnes, 121 Ga. 548; Freeman v. Lafferty, 207 Pa. St. 32; Armor v. Spalding, (Colo.) 23 Pac. 789; Shields v. Whitaker, 82 N. C. 516; Lance's App. 112 Pa. St. 456.)

In several of the cases cited the duty to sell was expressly stated, but in others it was held to be implied from the agreement to apply the proceeds of sale in a specified manner. The agreement in the case of Johnson v. Johnson, *supra,* provided that a stated sum should be paid out of the first payment made on the sale of a certain farm, and another stated sum out of the second payment. The Maryland court said: "The covenant does not, as may be observed, stipulate in express terms that the land shall be

sold and the proceeds of sale applied to the discharge of this particular debt. But we think that is the fair and reasonable implication from the terms employed."

In Diefendorf v. Spraker, *supra,* the grantee agreed in writing that "if and whenever I dispose of said tavern stand and appurtenances, or any part thereof, I shall realize from such sale more than $2,500 and interest thereon to the day of sale, that I will pay to them such overplus," &c. The contract was held to create a trust, and it was said that the premises were conveyed "for the express purpose of being converted into money by sale" and that the trustee was bound to execute the trust "with fidelity and reasonable diligence, and he could only be discharged by administering the trust himself or putting the administration in the hands of the court of chancery."

In the Illinois case of Freer v. Lake, a case very like the one at bar except that the property was to be held for a stated time, the promise contained in a letter was in these words: "I shall consider myself honorably bound, if anything can be made out of the property during the next three years, more than the interest, taxes, insurance and repairs, to give Mrs. Lake the benefit of it." The court said that "by the terms of the letter, Freer required an absolute deed to the property * * * in consideration for which he agreed to hold the property for three years, and all that could be made out of the property * * he would give to Mrs. Lake," and further, that under the terms of the letter "Freer bound himself, in the event that the value of the property advanced within three years, to sell, retain certain specified amounts, and pay over the surplus to Mrs. Lake. Here was a trust." The duty to sell was implied from the promise to give the grantor the surplus if anything could be made out of the property. It was also held in that case that the transaction was not a mortgage, for the reason that the previous debt of the grantor which had been a lien on the property conveyed was extinguished upon the delivery of the deed and she was released from its payment.

In Cooper v. Whiting, *supra,* certain land upon which three mortgages were outstanding was conveyed by the mortgagor to one of the mortgagees in fee, and the latter on the same date covenanted to pay the mortgage debts and that "if he shall be enabled in a reasonable time thereafter to sell said premises for more than a sufficient sum to pay the three aforesaid mortgage debts with charges and expenses which he may incur in relation to said premises, he will pay to said Sidney (the grantor) or his legal representatives such excess." The court said: "This was a trust. * * Although there was no express covenant on the part of Burlew to sell, his duty to sell can easily be gathered from the agreement, and there can be no doubt that the performance of that duty would have been enforced by a court of equity. Burlew would not have been permitted to hold the land to his own use, after an opportunity presented of selling for more than enough to pay the debts."

In Jones v. Kent, 80 N. Y. 585, the court was called upon to construe a written instrument in these words: "Received of J. W. Jones by agreement, one thousand shares of St. Joe Lead Stock for which I have paid him $3,000. The understanding is that I am to give said Jones one-half of whatever price the same is sold for, when sold over and above that sum." Though it was held that there was evidence to sustain the finding of the trial court that instead of a trust being created, the shares of stock were sold for a price named and one-half of whatever price the same should be sold for when sold over and above that sum, it was held that the agreement imported an obligation to sell which could be enforced. The court said: "It does not in words say that the stock shall be sold, but as Jones can have the price or consideration of his transfer from no other source, it seems manifest that the event should at some time happen. * * One contingency was clearly in the minds of the parties, the possibility of a sale at a price above $3,000. Until that came to pass Jones could have no interest in a

sale, and whether a sale should be made prior to that time was optional with Rockwell. It is urged that it was also for Rockwell alone to determine at what time after that event happened, he should sell. * * It is not necessary to determine the soundness of this contention, for Rockwell is now dead, and the property unsold, and because it is no longer in his power to comply with the terms of his agreement and bring about the event, on the happening of which his promise was to be performed, is the plaintiff to lose the consideration for which he bargained, or the fruition of it to be postponed until the representatives of Rockwell may in the course of administration deem it proper, or find it necessary to make a sale? * * This would be unreasonable and might render it impossible for the plaintiff to avail himself of the advantage for which he contracted."

In Pratt v. Thornton, *supra,* the defendant had taken a deed from his debtor and in a separate writing acknowledged that he received the deed as collaterial security for the debtor's note and also to indemnify the defendant as the debtor's surety upon a note to a third party, and agreed that if the notes were not paid he would "raise the amount from the property and pay the balance to said Tucker (the debtor and grantor), if any remains." This was held to create a trust which equity would enforce by requiring a sale of the property and an accounting of the rents and profits. In Cadman v. Peter, *supra,* the plaintiff being indebted to the defendant executed a deed conveying certain land to the latter pursuant to an agreement that the defendant should hold the land until he should sell it, and then share in any profit from the sale. It was claimed that the transaction was a mortgage, and relief was asked upon that ground, the agreement not being in writing. In the opinion Mr. Justice Blatchford, speaking for the court, said: "Under that agreement, even if it was valid, the deed cannot be turned into a mortgage, although the execution of the agreement, if valid, might be compelled, when the land

could be sold at a considerable profit. If the argeement is obnoxious to the statute which declares that no trust concerning or in any manner relating to land shall be created by parol, it cannot be enforced specifically nor employed to turn the deed into a mortgage. The agreement, if valid, would make Cadman a beneficiary under the deed, and create a trust in Peter concerning or relating to land, and, not being in writing and properly signed, is void under the statute of frauds."

In the early Kentucky case of Ogden v. Grant, *supra,* Grant had conveyed to Ogden a certain tract of land "with this understanding and agreement between the parties, that the said Ogden is, as soon as possible, to sell said land for the best possible price, and dispose of the money arising from the sale, by paying himself" a sum acknowledged to be due to him from Grant, and the residue to the latter, or to his order. The court said: "There can be no doubt that the land was conveyed to Ogden, not absolutely as his own, but merely in trust, for the purpose of being sold by him as a trustee, for securing his own debt, and paying the residue of the avails of the sale to Grant, as residuary *cestui que trust."* The case cited from Michigan, Cook v. Bell, *supra,* disclosed a written contract whereby the mortgagee of lands situated in Michigan, who had at the same time received a deed from the mortgagor of lands situated in Wisconsin, agreed to sell the Wisconsin lands and apply the proceeds, after deducting expenses, upon the mortgage. It was held that as to the deeded lands the grantee was a trustee, and as such obligated to sell the lands and apply the proceeds upon the mortgage, and having failed to make a sale, and thereby lost the benefit of the lands to the debtor, he was chargeable, in a suit to foreclose the mortgage on the Michigan lands, with the Wisconsin land that he had refused to sell.

In the case of Sawyer v. Cook, 188 Mass. 163, above cited, it appeared that a large tract of unimproved land had been deeded to three parties, two of them paying part of the

purchase price, the balance being secured by mortgage to
the grantor. The third grantee who had paid nothing in
money subsequently conveyed his interest to the other gran-
tees, and it was agreed in writing that the latter should
first repay themselves from the money received from sales
for all advances at the time of purchase, and further to
pay therefrom the outstanding mortgage and an unsecured
note of the three parties, and that after such payments the
parties should share in the money received from the re-
maining lots sold in stated proportions. It was there claimed
as here that the agreement was to be treated as a simple
contract and that the party who had conveyed his interest
gained no equitable interest in the real estate. But it was
held that while the fee was conveyed it was only for the
accomplishment of the objects recited in the agreement, that
no particular form of words is required to create a trust,
but whether one exists or not is to be ascertained from the
intention of the parties, and that the grantees had engaged
and became bound to deal with the property not only for
their own benefit but for that of the grantor, and the court
say: "In doing so they were under an obligation to pro-
ceed diligently, to act in good faith in its management, to
account for all sales, and to pay over his share of the
common fund, which upon sales being made took the place
of the land. Although not nominally so designated they thus
became trustees under an express trust." In a much earlier
case in the same state one who had received from his debtor
by endorsement a note against a third party recovered a
judgment upon it, and after levying an execution upon
the rents and profits of certain land of the maker of the
note, promised the plaintiff, the son of the endorser of the
note, to pay him all sums of money received on the judg-
ment after his demand against the plaintiff's father should
be paid, or to allow him the use and improvement of the
land after such payment. As against the contention that
there was no trust but only a personal obligation of the
promisor, the court announced itself satisfied that the writ-

ing was a sufficient declaration of trust.   (Arms v. Ashley, 4 Pick. 70.)

In support of their contention that the contract under consideration did not create a trust but a mere personal obligation, counsel for defendants cite several cases which are not in point and are clearly distinguishable from the case at bar.   Any attempt to refer to all or any great number of them would unduly extend this opinion but a few have been selected for comment to show that the cases more strongly relied on do not touch the question or affect the principle here involved.

Counsel first refer to authorities upon the proposition that a condition in a deed inconsistent with the estate conveyed cannot be enforced, and a case is cited holding that where a deed conveys a fee and provides that any part of the property owned by the grantee at the time of his death shall revert to and become the absolute property of the grantor, the condition is inconsistent with the fee and therefore unenforceable.   The application of that principle to the case at bar is not apparent.   It will hardly be contended that a fee simple title cannot be conveyed in trust, for that is a very common transaction universally upheld and enforced if the trust has been lawfully declared, and indeed it is a general rule that the trustee takes an estate commensurate with the trust to be performed, and hence a fee simple title if he is authorized to sell and convey the fee.   The contract here is not inconsistent with the title conveyed, nor is it a limitation upon it except in the sense in which every trust is a limitation.   It determines the purpose for which the conveyance was made, and the duties to be performed by the grantee as a trustee holding the legal title.

Again counsel cite Kickland v. Menasha W. W. Co., 68 Wis. 34, (60 Am. Rep. 831.) ; Byers v. Locke, 93 Cal. 493, (27 Am. St. 212), and Miller v. Kendig, 55 Ia. 174, as sustaining the proposition that a contract like the one under consideration does not create an interest in or a trust re-

lating to land.   In these cases the statute of frauds was in-
voked to defeat recovery of money upon an oral contract,
and they maintain the right of a grantor or former owner
of real estate to recover from the grantee an agreed pro-
portion of the proceeds realized by the latter on a subsequent
sale, though the agreement for the payment of such pro-
ceeds to the grantor was not in writing; it being held in
such cases that the contract sued upon was not obnoxious
to the statute of frauds as it did not create an interest in
or relate to the sale of the land, but pertained merely to
the purchase price or the consideration for the conveyance.

The case of Kickland v. Menasha &c. Co. involved an
oral agreement made upon the sale of certain land whereby
the grantee, in addition to a stated sum paid at the time
of the sale, was required "whenever and at such time" as it
shall sell the premises to pay to the grantor one-half of
the excess it shall receive as the consideration of such
sale over and above the amount of the original payment,
after deducting from such excess the costs, expenses and
improvements.   It was held that parol proof might be given
to show an additional consideration not inconsistent with
the deed, that the land having been sold the share of the
proceeds agreed upon could be recovered, and that the
contract was not void by the statute of frauds since it
was not sought thereby to impeach the deed as a valid
conveyance.   In other words the contract there sought to
be enforced was one for the payment of money as part
of the agreed consideration for the purchase of the land.

In Byers v. Locke, the owner of the equity of redemption
agreed verbally with another that the latter should advance
money necessary to redeem the property from a foreclosure
sale, taking a deed from the former to enable him to do so,
and that he should hold the property until it could be sold,
and upon a sale, after deducting his advances with interest
and taxes pay the balance of the proceeds to such original
owner.   The agreement was carried out until the land was
sold, and thereupon the former owner sued to recover

his agreed share of the proceeds. His right to recover was upheld on the ground that the contract sued upon was not an agreement for the sale of land or the creation of any interest therein, but merely one for the payment of money agreed upon as the consideration for which the plaintiff executed to defendant the conveyance.

The Iowa case of Miller v. Kendig is similar to the case of Kickland v. Menasha Co. The plaintiff averred that he had sold and conveyed to the defendant certain land for an agreed stated price, and for one-half of what the defendant would realize above that sum in case of a sale for a larger amount; that the land had been sold by defendant for a larger amount and defendant had refused upon demand to pay the plaintiff the share of the proceeds to which he was entitled under the agreement. The court held that the contract pertained merely to the purchase price; that as it did not obligate the grantee to sell the grantor retained no interest in the land, and the agreement was therefore valid though not in writing. But the court said: "Where land is conveyed under an agreement that it shall be re-sold upon the joint account of grantor and grantee, there is much reason for holding that the grantor retains an interest in the land. We are inclined to think that if the agreement in such case were in writing, and the grantee should refuse or neglect to sell, and should appropriate the land to his own use, the grantor would be entitled to have the agreement enforced in a court of equity."

That these cases are not in conflict with those decisions such as have been above cited declaring a trust relating to land to be created by a contract like the one before us is apparent. The statement found in the opinions that the agreement sued on was not one for the sale of or the creation of an interest in the land refers to the unperformed part of the agreement, where it also provided for a sale of the land, upon which part only the action was based. The sale having occurred, the trust, if any, or the interest of the plaintiff, attached to the proceeds, in respect of

which the agreement was not required to be in writing. This is made plain and the principle upon which the cases are correctly decided clearly stated in other cases of the same class, showing that the right to maintain such an action after a sale is independent of the question whether the agreement for the sale created a trust. Among such cases are the following: Michael v. Foil, 100 N. C. 178; Sprague v. Bond, 108 N. C. 382; Trowbridge v. Wetherbee, 11 Allen, 361; Hess v. Fox, 10 Wend. 437.

In Trowbridge v. Allen, *supra,* the agreement required a sale of the property, and the same had been sold. The suit was to recover a surplus of the proceeds. The court observing that whether the plaintiff had an interest in the property by way of resulting trust need not be considered, said: "The defendant did not agree to convey any part of the land to the plaintiff, but to sell and convey it to some other person and pay the plaintiff his share of the net proceeds in money. The first part of this promise, namely, the promise of the defendant to sell the land, was within the statute, and if he had refused to sell, the plaintiff could not have maintained an action to enforce the promise to sell. * * * * But the promise to sell has been performed, and when a promise which was within the statute has been performed, the contract is no longer within the statute."

In Sprague v. Bond, *supra,* it is said: "The enforcement of the alleged agreement, *after the sale of the land,* does not in any respect impinge upon the terms of the conveyance, but relates entirely to the payment of the consideration. It is true that the plaintiff could not have compelled the defendant to execute her agreement to sell the land, as there was no enforceable trust, and the agreement was within the statute of frauds, but this part of the agreement has been voluntarily performed, and the other part, not being within the statute, may now be enforced."

In Hess v. Fox, *supra,* the court said: "The part of the agreement which was incapable of being enforced had been

performed. Fox, I am inclined to think, had the money in his hands for the use of Hess, and ought, in equity and good conscience, to·pay it over to him. No question can arise here as to the validity of the *agreement to sell;* that was performed, and the remaining part was to pay over money, supported by the consideration of land conveyed to the promisor." In Iowa where the case of Miller v. Kendig, *supra,* was decided, a trust relating to land is held to be created by a contract providing for a sale of the land conveyed and a payment of the net proceeds to the grantor or another party. (Harris v. Clark, 94 Ia. 327; McGinness v. Barton, 71 Ia. 644.) We shall not attempt a discussion of other lines of cases which have been cited. We do not regard them as applicable or persuasive upon the question of the relation between the parties under the contract here in controversy, since the cases cited were decided upon a much different state of facts.

We do not regard the question of rents and profits as very material. The only amount involved in that connection upon the evidence is $250. The expense of the defendants for taxes, insurance and other incidental matters is not shown, the record upon that subject disclosing only a stipulation that the rents and profits equaled such expenses, except that if allowable, $250 is agreed upon as the value of the use by the defendants of the farm lands. Whether the plaintiff would have been entitled to rents and profits had the defendants proceeded within a reasonable time to sell the property need not be considered, since it does not seem unreasonable or inequitable that the above mentioned sum should be allowed as of the date agreed upon, viz: July 22, 1901, in view of the fact that although the lands might have been sold at and before that time and ever since then at a price far in excess of the claim of the defendants, the latter neglected or declined to sell, and used and occupied the property.

The amount of the claim of the defendants is, we think, correctly determined by the findings and judgment. A

reasonable construction of the contract as to the principal amount of the claim is that the parties agreed upon the sum of $4,000 as the amount then due the defendants and as the principal of their claim, and that this was so understood by them is borne out by the evidence. The debt previously represented by the notes and mortgages having become extinguished as a personal obligation of the plaintiff, and no agreement having been made as to the rate of interest upon the claim after the date of the contract, it is evident that the defendants are only entitled to the rate fixed by law in the absence of an agreement stating a different rate, viz: eight per cent per annum. It is not contended that upon this basis the computation was erroneous.

It is contended that the plaintiff's cause of action is barred by the statute of limitations and also by his laches. But in the case of an express and continuing trust, and the one here is of that kind, the statute does not begin to run until repudiation or adverse possession by the trustee and knowledge thereof on the part of the beneficiary. (Perry on Trusts, 5th Ed., Secs. 228, 863; 28 Am. & Eng. Ency. L., 2nd Ed., 1133, 1134.) It is at least doubtful if the period prior to a known repudiation or breach of the trust is to be considered in determining the question of alleged laches. It is said that time does not bar a direct trust where the relation of trustee and *cestui que* trust is admitted to exist, but diligence must be used to establish a constructive trust on the ground of fraud. (Perry on Trusts, Sec. 228.) It does not appear in this case that the repudiation of the trust was brought to plaintiff's knowledge until two days before this suit was commenced. The defendants had not erected any improvements on the premises or done any other act with relation thereto which would plainly indicate adverse possession or repudiation of the agreement at an earlier date, or which would render the granting of the relief prayed for inujrious to them or inequitable by reason of delay in bringing the action. The defendants do not

appear to have suffered any loss or inconvenience from the plaintiff's delay in demanding a sale of the property, except possibly the loss of a higher rate of interest or profit upon the money invested had it been previously realized from the property, but that loss they might themselves have obviated by a sale of the property. Upon the facts in the case, even if the entire period subsequent to the contract should be taken into consideration, we are satisfied that plaintiff is not chargeable with such laches as would justify the court in refusing relief. (Perry on Trusts, Secs. 228-230.) The cases cited by counsel for defendants on this question are strikingly dissimilar to the case at bar, and involve the right to recover upon the theory of a constructive or resulting trust, or an allegation of fraud or illegality in the acquirement of property.

The costs taxed in the case include an allowance of $500 as the compensation of the special master commissioner. The defendants moved to retax the costs on the ground that said compensation was excessive and illegal, which motion was overruled. That ruling is here complained of. The matter is also involved in another case brought here on error by the defendants from the order allowing the compensation, and the evidence taken upon the question is brought into that record but not into the record of this case. We have therefore disposed of the question in the other case affirming the allowance, and as our reasons are fully stated in the opinion in that case we need not here further discuss the matter, it being sufficient to say that we hold the allowance to be neither excessive nor illegal.

It follows from the conclusions above stated that the defendant in error, who has been referred to in this opinion as plaintiff, his title in the court below, is entitled to have the agreement enforced as a trust. The relief granted ought to be such as will effectually give to the plaintiff that for which he contracted, without depriving the defendants of their rights under the contract save such as may have been lost through their failure to perform the trust. It is con-

tended that the judgment complained of erroneously converts the right of the plaintiff to a surplus of the proceeds of a sale of the property into an interest in the property itself, and therefore improperly awards to him the legal title upon payment of the claim of defendants. But this suit invokes the equitable jurisdiction of the court, and it is a fundamental principle that equity regards and treats that as done which in good conscience ought to be done. The defendants assumed the duty of selling the property to carry out the purposes contemplated by the contract, and it ought to have been sold by them, since it is clear upon the evidence that it might have been sold for a price largely in excess of their claim, leaving a substantial surplus for the plaintiff. Having repudiated the trust without performance or reasonable excuse for non-performance, they are not entitled in this suit brought for an enforcement of the trust to insist that the agreement be strictly and technically enforced according to its terms by a sale of the property, so long as they receive all that they were to have in case of a sale.

It is said that "equitable remedies are distinguished by their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties." (1 Pomeroy's Eq. Juris., 3rd Ed., Sec. 109.) It is shown and indeed conceded that the value of the land in controversy greatly exceeds the amount of the claim of the defendants; it appears to consist of separate tracts, and no good reason is apparent for requiring a sale unless it be necessary to pay the amount to which the defendants are entitled. If the plaintiff is able and willing to pay the amount the land may under the circumstances be regarded in equity as taking the place of the proceeds.

Upon the face of the findings and the judgment, it would seem that the transaction was treated as both a

mortgage and a trust. We are unable to assent to the theory that it was a mortgage, and for that reason we think that the judgment should be modified so that instead of adjudging the amount due the defendants a lien upon the premises, it be adjudged that they were trustees holding the legal title for the purpose of selling the property and applying the proceeds according to the terms of the contract; that without reasonable excuse they have refused to perform the trust and have repudiated it, wherefore the plaintiff is entitled to have the property sold and the surplus paid to him after satisfying the costs of sale and the claim of defendants, or, at his election upon his payment of said claim within the time specified in the judgment, to have the lands restored to him. In all other respects the judgment will be affirmed.

BEARD, J., concurs.

SCOTT, J., did not sit.

ON PETITION FOR REHEARING.

SCOTT, JUSTICE.

This case was decided at the present term of this court. (98 Pac., 590.) Plaintiffs in error have filed their petition for a re-hearing. No new question has been presented in the brief or argument which was not considered in the opinion filed. The opinion discussed thoroughly all questions sought to be raised by the petition. The court adheres to the views expressed in the former opinion. The writer did not participate in that decision, but upon examination of the questions involved fully concurs in that decision.                                        *Rehearing denied.*

POTTER, C. J., and BEARD, J., concur.